■ In the Matter of DARRELL L. BOWEN, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Per Curiam. Respondent is an attorney admitted to practice by the Fourth Department in 1983. The instant proceeding to discipline him for professional misconduct arose out of allegations that respondent, who conducts a private law practice in the City of Plattsburgh, made improper advances to eight females who had either retained or consulted him regarding their matrimonial or child custody problems, and that such conduct, *inter alia,* adversely reflects upon his fitness to practice law. It was further alleged that respondent counseled two clients to leave the jurisdiction of the Clinton County Family Court, against that court's orders, and that he knowingly offered a false document for filing with the court.

The above allegations were set forth in 10 charges of professional misconduct filed against respondent. Following a hearing, the Referee issued a report sustaining five of those charges in full and one specification of a sixth charge. Petitioner and respondent have each moved for an order confirming in part and disaffirming in part the Referee's report.

Charge I of the petition alleges that respondent violated Code of Professional Responsibility DR 1-102 (A) (4), (5), (6); 7-102 (A) (7), (8), in that he engaged in conduct that was prejudicial to the administration of justice and which adversely reflects on his fitness to practice law by counseling a client to violate a court order. More specifically, the charge alleges that in September 1986, respondent counseled client Brenda HH.* to leave the jurisdiction of the Clinton County Family Court by moving herself and her two children to the Town of Vestal, Broome County, in contravention of an order of that court which had specified that the children were not to be removed from the court's "jurisdiction". This charge was not sustained by the Referee.

Charge II alleges that respondent violated DR 1-102 (A) (3), (4), (5), (6); 7-102 (A) (4), (8), by furnishing a false document to the court. Petitioner contends, and respondent admits, that he sent blank legal forms to client Brenda HH. in Vestal, which she signed in blank pursuant to respondent's instructions and returned to him. Respondent later filled out the forms and notarized the client's signature in her absence, and then submitted the documents to the court in the course of his representation of this client in her divorce and custody proceedings. This charge was sustained by the Referee.

Charge III alleges that respondent violated DR 1-102 (A) (3), (5), (6) as well as DR 5-101 (A); 5-102 (DR 5-101 [A] generally prohibits a lawyer from accepting employment if his professional judgment might be impaired by his personal interests; DR 5-102 mandates withdrawal if it appears the attorney might be called as a witness on behalf of his client). The two specifications of this charge relate that respondent was retained by Brenda HH. in September 1986 to represent her with respect to certain matrimonial and family problems. At their first meeting, Brenda HH. told respondent that her husband had left the marital residence, taking with him their two young children, the family car, her credit cards and life savings. During the course of this meeting, respondent complimented Brenda HH.'s physical appearance, stroked her hair and asked her to go out with him. After Brenda HH. and her children moved to Vestal, respondent made arrangements to meet her there, advising her that he might refuse to work on her case if she refused to initiate a sexual relationship with him. Thereafter, the relationship between respondent and this

---

* Because of the nature of the charges, fictitious names are used to identify the complainants.

client evolved into a sexual one. The Referee sustained this charge.

Charge IV alleges that respondent further violated DR 1-102 (A) (3), (5), (6); 5-101 (A); 5-102 by entering into a personal and sexual relationship with client Robin II., thereby again engaging in conduct which would impair his professional judgment. The Referee did not sustain this charge since respondent withdrew from the case soon after having been admonished to do so by the Supreme Court Justice presiding over the case on the ground that respondent's professional representation of a woman with whom he was known to be having an affair presented unacceptable conflicts of interest.

Charge V alleges further violations of DR 1-102 (A) (3), (5), (6); 5-101 (A); 5-102, constituted by respondent's entering into a sexual relationship with client Carole JJ. The two specifications of this charge relate that respondent was retained by Carole JJ. in May 1987, at a time when she had just been served with a summons commencing a divorce action and a petition for custody of her one-year-old daughter. The client had been left by her husband at a bus station in Plattsburgh with $10 and instructions to take a bus back to her parents' home in Arkansas. While this client was consulting with respondent, attempting to obtain legal help, he persuaded her to have dinner with him and to spend the night at his house. A two-month extramarital affair ensued, during the course of which Carole JJ. lived in respondent's house, acting as a baby-sitter for his two children. The Referee sustained specification 1 of this charge but did not sustain specification 2, which alleged that in August 1987, respondent took his client and her daughter on a day trip outside of Clinton County, thereby violating a directive of Family Court.

Charge VI alleges a further violation of DR 1-102 (A) (3), (5), (6) arising out of respondent's allegedly having gone to the apartment of the wife of a criminal defendant he had been assigned to represent and making sexual advances to her during this visit. Respondent admitted the visit but vehemently denied that any improprieties occurred. The Referee did not sustain this charge in view of testimony from the complainant's mother-in-law to the effect that complainant had told her the allegations against respondent were a fabrication.

Charges VII, VIII, IX and X all allege violation of DR 1-102 (A) (3), (5), (6), relating that in December 1986, January 1985, August 1987 and June 1987, respectively, female clients came to respondent's office seeking legal counseling regarding their

matrimonial problems, and, in each instance, respondent complimented the client's physical appearance and asked her to go out socially with him. In charge VIII, respondent further implied to the client that the amount of his fee would depend upon the course of his social relationship with her. The Referee sustained charges VII, IX and X but did not sustain charge VIII because there was no ongoing attorney-client relationship.

We conclude that the record fully supports the findings of the Referee in sustaining charges II, III, V (specification 1), VII, IX and X. His determinations in this regard are clearly supported in the record by the complainants' testimony and, in most instances, by respondent's own admissions of guilt. We also concur with the Referee's determination that there was insufficient evidence to sustain charges I, IV, V (specification 2) and VI. We cannot, however, agree with the Referee's failure to sustain Charge VIII. This charge contains allegations which are virtually identical to those sustained in charges VII, IX and X, i.e., that respondent violated DR 1-102 (A) (3), (5), (6) by attempting to pursue a personal relationship with women who came to his office seeking professional advice and assistance regarding matrimonial problems.

In mitigation of the sustained charges of misconduct, respondent submits that the complained-of relationships with clients were consensual in nature and, moreover, were the result of a mental disorder from which he suffers, commonly known as manic depression. It appears that since 1985 respondent has been treated with a prescribed antidepressant medication to even out the mood swings which are characteristic of this disorder. According to respondent, during the time the above acts of misconduct occurred, he took doses of this medication which were far in excess of those prescribed in order to achieve a "high". Respondent claims that this practice caused the "judgmental indiscretions" which ultimately resulted in the instant disciplinary proceeding.

It is obvious that the charges sustained against respondent reflect adversely upon his fitness to practice law, as well as upon the legal profession as a whole, and that they warrant condemnation by this court. The record reveals that respondent repeatedly attempted to use the attorney-client relationship and the trust engendered thereby in furtherance of sexual relationships, taking particular advantage of clients whose matrimonial difficulties placed them in a highly vulnerable emotional state. Such conduct warrants sanction not only because it is likely to be emotionally detrimental to the client,

but also because it has the potential to severely prejudice the client's legal interests, including the assertion of substantial rights to equitable distribution of marital property, child custody and visitation *(see,* Dubin, *Sex and the Divorce Lawyer: Is the Client Off Limits?,* 1 Geo J of Legal Ethics 585, 614 [1988]).

It is further obvious that such conduct is likely to compromise the good judgment and legal advocacy of the attorney which should be directed toward achieving an outcome of the case in the client's best interests, unaffected by the attorney's personal interests.

While this court has not spoken on this issue before in a case involving an attorney, it has considered and sustained sanctions in cases involving physicians who have used the leverage of a doctor/patient relationship to obtain sexual favors from their clients *(see, e.g., Matter of Ackerman v Ambach,* 142 AD2d 842). In *Matter of Rudner v Board of Regents* (105 AD2d 555, 556), a case involving such misconduct by a psychologist, this court stated: "Imposition by a person in a helping profession of his personal intimate desires upon individuals who are likely to be at an emotionally vulnerable point in their lives conflicts with a duty to act in the best interests of his clients. The licensing authorities, as well as the courts, are loathe to tolerate misconduct of a sexual nature by professionals in the human services field". We note that respondent's misconduct here is all the more irresponsible and blameworthy if it was, as he alleges, the result of abuse of a prescribed medication.

Respondent's fitness to practice law has been cast into considerable doubt and his actions have brought dishonor upon the profession he represents. We have considered the arguments advanced by respondent in mitigation, namely, that he has already suffered both personally and professionally in his community as a result of these incidents, that he has cooperated fully in their investigation by petitioner, and that his actions are attributable to a psychological/emotional condition which is now under control. Nevertheless, under the circumstances here presented, suspension of respondent's license to practice law for a period of two years is mandated to deter similar misconduct and preserve the reputation of the Bar.

Motion and cross motion granted to the extent that the Referee's findings as to charges I, II, III, IV, V, VI, VII, IX and X are confirmed; the finding as to charge VIII is disaffirmed and that charge is sustained; respondent suspended from the

practice of law for a period of two years and until further order of this court, the date of commencement to be fixed in the order to be entered hereon. Mahoney, P. J., Casey, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.