**STATE of Oklahoma, ex rel. OKLA- HOMA BAR ASSOCIATION, Complainant,**

v.

**John P. SOPHER, Respondent.**

**SCBD No. 3793.**

Supreme Court of Oklahoma.

April 27, 1993.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

John P. Sopher, pro se.

ALMA WILSON, Justice:

The Bar Association filed a complaint against the respondent alleging that he had engaged in unprofessional conduct. The respondent and counsel for the Oklahoma Bar Association appeared before a trial panel of the Professional Responsibility Commission and agreed to findings of fact, conclusions of law, and a recommendation for discipline. The trial panel adopted the stipulations and the recommendation for discipline that the respondent be publicly reprimanded.

The parties agreed that the respondent violated the mandatory provisions of Rule 8.4(d) of the Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A. That rule provides in pertinent part that "It is professional misconduct for a lawyer to ... (d) engage in conduct that is prejudicial

to the administration of justice...." The respondent agrees that his conduct, which resulted in a bar complaint, is a violation of that rule.

The facts are taken from the stipulations submitted by the parties and adopted by the trial panel. A woman who had previously been employed as a secretary for the respondent came to his office to discuss two legal matters. One matter involved a charge against her in Oklahoma City Municipal Court for committing a lewd act while she was employed as an exotic dancer at an Oklahoma City bar. In the other matter, the woman related that her boyfriend, while exercising visitation with their son, had taken him to live in California. The respondent agreed to represent the woman on both matters for a retainer of $700.00. The woman paid the respondent all that she had with her, $30.00. She agreed to pay the balance at a later date.

As she got up to leave, the respondent came around his desk, put his arm around her and hooked his finger in the top of her blouse. He then pulled her blouse out, looked down it and commented, "Don't expose yourself." The woman's mother had accompanied her to the respondent's office and had been waiting in the reception area. When the daughter left the respondent's office, he motioned the mother to come into his office. Without knowing what had just occurred, she went in while the daughter waited in the reception area. The respondent did the same thing to the mother that he did to the daughter. He looked down the mother's blouse and said, "How's it going down there?" She then left the respondent's office.

As the mother and daughter were on the elevator in the office building, they learned that each had been subjected to the same offensive conduct by the respondent. They then drove to the office of another lawyer whom the mother knew. That lawyer telephoned the respondent who agreed to return the $30.00 that the daughter had paid him.

According to the stipulated facts, the respondent would testify that at the time of the incident he believed his conduct would not be offensive due to his previous acquaintance with the mother and the jocular nature of their relationship, which was one that had sometimes involved the sharing of off-color humor. The Bar Association maintains that the conduct was patently offensive and not excused by any prior relationship.

The respondent admits and acknowledges that, in hindsight, his conduct was inappropriate and that the mother and daughter were genuinely offended by it. The parties agree that whatever the nature of the respondent's previous relationship with the mother and daughter, his conduct was neither justified nor appropriate in an attorney-client setting. Counsel for the Bar Association commented during the hearing that the respondent had cooperated with the investigation and that his cooperation should be considered in mitigation of his behavior.

Although the recommendations of the trial panel are given great weight, this Court reviews the facts as reflected in the record, makes its own findings and determines the appropriate discipline. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 832 P.2d 814, 817 (Okla.1992). We accept the findings of fact by the trial panel, to which the Bar Association and the respondent stipulated. The only issue left for consideration is the level of discipline to be imposed. Although discipline of lawyers may have an element of punishment,[1] the ultimate purpose in disciplining lawyers is not punishment but purification of the Bar and protection of courts and public in general.[2]

The matter before us is one of first impression in this state. Although we find no cases with identical facts, we do find lawyer disciplinary cases from other jurisdictions involving unwelcome and uninvited sexual advances between lawyers and their clients. The discipline administered has

---

1. *In re Littleton,* 719 S.W.2d 772, 778 (Mo.1986).

2. *State, ex rel. Oklahoma Bar Ass'n v. Bradley,* 746 P.2d 1130, 1134 (Okla.1987).

ranged from public reprimand to disbarment, based on the severity of the actions or multiple unprofessional acts by the attorney involved.[3] The more severe cases involve criminal charges as well.

The Supreme Court of Indiana publicly reprimanded a lawyer who grabbed his client, kissed her and raised her blouse. *In the Matter of Darrell Adams,* 428 N.E.2d 786 (Ind.1981). That court found that the lawyer's actions constituted illegal conduct involving moral turpitude and adversely reflected on his fitness to practice law.[4] The Indiana Disciplinary Commission and Adams tendered an agreement for a public reprimand as the sanction for Adams' professional misconduct. The court commented:

> Realizing that the publication of this opinion will have a detrimental effect on the Respondent's legal practice, we find the proposed discipline appropriate under the facts of the present case. It should be obvious that Respondent sought to exploit the attorney-client relationship for his personal physical pleasure. Conduct of this ilk is particularly repugnant while the client is dependent upon the attorney for guidance and assistance.

*Adams,* 428 N.E.2d at 787.

In *Committee on Professional Ethics v. Durham,* 279 N.W.2d 280 (Iowa 1979), a

---

**3.** The following cases involved public reprimands: *People v. Zeilinger,* 814 P.2d 808 (Colo. 1991) (male attorney engaged in sexual relations with female client); *In the Matter of Adams,* 428 N.E.2d 786 (Ind.1981) (attorney grabbed female client, kissed her and raised her blouse); *Committee on Professional Ethics v. Durham,* 279 N.W.2d 280 (Iowa 1979) (female attorney visited male client in her professional capacity at the penitentiary and engaged in kissing, caressing and fondling). The following cases involved suspensions: *Drucker's Case,* 133 N.H. 326, 577 A.2d 1198 (1990) (male attorney received two-year suspension when he engaged in sexual relations with female client who was under the care of a psychiatrist and emotionally fragile; and, he failed to pursue an arbitration matter); *Matter of Bowen,* 150 A.D.2d 905, 542 N.Y.S.2d 45 (N.Y.App.Div.1989) (male attorney received two-year suspension for engaging in sexual affairs and making improper advances to female clients); *The Florida Bar v. Samaha,* 557 So.2d 1349 (Fla.1990) (male attorney suspended one year for touching the back and thighs of a nineteen year old female client while taking seminude photographs which were unnecessary for her personal injury case); *Matter of Wells,* 572 N.E.2d 1290 (Ind.1991) (male attorney suspended for three years for engaging in unsolicited or nonconsensual touching of young men during course of professional association and for playing videotapes of oral sex and sexual intercourse to high school students visiting his office); *Matter of Discipline of Bergren,* 455 N.W.2d 856 (S.D.1990) (male attorney suspended for one year for having sexual relationships with two female clients and for kissing and providing an alcoholic beverage to a minor girl); *Matter of Disciplinary Proceedings Against Ridgeway,* 158 Wis.2d 452, 462 N.W.2d 671 (1990) (male attorney suspended for six months for initiating and engaging in sexual contact with a female client being represented for possible parole revocation and for providing beer contrary to the conditions of her parole); *Matter of Disciplinary Proceedings Against Woodmansee,* 147 Wis.2d 837, 434 N.W.2d 94 (1989)

(male attorney suspended for three years after being convicted of fourth-degree sexual assault on a client); *Matter of Disciplinary Proceedings Against Gibson,* 124 Wis.2d 466, 369 N.W.2d 695 (1985) (male attorney suspended for ninety days when he made unsolicited sexual advances to female clients, one of whom filed a complaint with the police when he kissed and put his hands under her clothing). In the following cases the attorney was disbarred (all three cases involved additional unprofessional conduct as well): *People v. Gibbons,* 685 P.2d 168 (Colo. 1984) (sixty-six year old male attorney who represented multiple criminal defendants, including a husband and wife, engaged in covert sexual relationship with the twenty-three year old wife who complained that she was required to engage in sexual relations as a condition of his representation); *Matter of Stanton,* 103 N.M. 413, 708 P.2d 325 (1985) (male assistant public defender convicted of attempted criminal sexual contact in the fourth degree for attempted sexual contact on one of his female clients); *State v. Heilprin,* 59 Wis.2d 312, 207 N.W.2d 878 (1973) (male attorney suspended indefinitely when he talked obscenely to female clients, exposed himself, and touched female clients on chest and in pelvic area). Heilprin was subsequently disbarred when he directed sexually explicit and suggestive comments and questions to two female clients during office conferences. *Matter of Disciplinary Proceedings Against Heilprin,* 168 Wis.2d 1, 482 N.W.2d 908 (1992).

**4.** The Indiana court cited D.R. 1–102(A)(3) and (6) of the *Code of Professional Responsibility for Attorneys at Law. Adams,* 428 N.E.2d at 787. That rule provides:

> (A) A lawyer shall not:
>
>     \*     \*     \*     \*     \*     \*
>
> (3) Engage in illegal conduct involving moral turpitude.
>
>     \*     \*     \*     \*     \*     \*
>
> (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

female attorney was disciplined for sexual contact between her and a male client who was an inmate in a penitentiary. The Supreme Court of Iowa found that the attorney had engaged in kissing and embracing during the visits in question, as well as occasionally caressing or fondling. The conduct was observed and reported by the officials of the penitentiary. The court explained that the attorney's conduct was not reprehensible per se, but she was publicly reprimanded because she had entered the institution in the capacity as lawyer for the inmate, and that the conduct reflected adversely on her fitness to practice law. The court observed:

> Sexual contact with a client in a professional context is not activity which a reasonable member of the bar would suppose to be allowed by the [Iowa Code of Professional Responsibility for Lawyers]. Such conduct is well outside that which could be termed temperate and dignified and would amount to professional impropriety, both in terms of the dictionary definitions and general understanding of the words used.

*Durham*, 279 N.W.2d at 284.

In *People v. Zeilinger*, 814 P.2d 808 (Colo.1991), an attorney received a public reprimand for engaging in sexual relations with a woman whom he was representing in a dissolution of marriage action. The dissolution involved custody of minor children and property settlement. The Supreme Court of Colorado found that the actions of the attorney reflected on his fitness to practice law, and involved a conflict of interest. The court commented:

> Aside from the consequences on the respondent's own life and professional practice, engaging in a sexual relationship with a client undergoing a divorce may destroy chances of a reconciliation, and blind the attorney to the proper exercise of independent judgment. There is also a significant danger that when the division of property or the custody of minor children is contested, the attorney may himself become the focus of the dissolution or custody proceedings, be called as a witness, and thereby inflict great harm on the client.

*Zeilinger*, 814 P.2d at 810.

The Supreme Court of Missouri suspended an attorney for six months where he made uninvited sexual advances toward an incarcerated female client, and for making additional sexual advances including brushing his hand across her breasts after she had been released from custody. These actions also resulted in his being criminally charged with sexual abuse, third degree.[5] *In re Littleton*, 719 S.W.2d 772 (Mo.1986). Citing the Indiana case of *Adams*, the court concluded that Littleton's actions were "contrary to justice, honesty, modesty and good morals." *In re Littleton*, 719 S.W.2d at 776. That court observed:

> Respondent and [client] entered into a professional relationship. [Client] had a right to expect that respondent would conduct himself in that relationship in a manner consistent with the honorable tradition of the legal professional—a tradition founded on service, integrity, vigorous commitment to the client's best interests, and an allegiance to the rule of law. Instead of remaining true to that tradition, however, respondent chose to exploit it, seeking to turn the professional relationship into a personal one. 'Conduct of this ilk is particularly repugnant while the client is dependent upon the attorney for guidance and assistance.' *In the Matter of Adams, supra* at 787.

*In re Littleton*, 719 S.W.2d at 776. Because the attorney had also accepted $1,000.00 from third parties as bond money and failed to return it to them, the court determined that suspension was the appropriate discipline.

Taking advantage of the attorney-client relationship by making sexual advances accompanied by offensive touching is professional misconduct and will result in disciplinary action against the attorney when the matter is brought to the attention of

---

5. The matter was presented to a grand jury which issued a no true bill. *In re Littleton*, 719 S.W.2d 772, 775 (Mo.1986).

this Court. Clients are in a vulnerable position. Exploiting the client for gratification of the attorney will not be tolerated by this Court. We agree with observations of the Indiana Supreme Court, which chose to follow the recommendations of their Disciplinary Commission. We will likewise follow the recommendation of the Bar Association and issue this public reprimand to the Respondent.

We reprimand the respondent John P. Sopher and admonish him that such uninvited sexual advances is unprofessional conduct not to be condoned by this Court. We order that the respondent bear the costs of this proceeding in the amount of $300.25.

RESPONDENT PUBLICLY REPRIMANDED.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, KAUGER, SUMMERS and WATT, JJ., concur.

OPALA, J., dissents.

OPALA, Justice, dissenting.

This tempest-in-a-teapot factual backdrop makes this case unfit as a vehicle for today's message of warning that (a) yesteryear's sexual law-office games will no longer be tolerated and (b) the Bar's disciplinary cognizance may indeed focus on a male lawyer's display of excessive macho in the context of an attorney-client relationship. I would resist the temptation by administering a private reprimand and deferring the court's sweeping pronouncement on a new, more sensitive, "gender-inoffensive" professional etiquette to be followed by the practicing bar.