**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION,
Complainant,**

v.

**Thomas H. BRUNER, Respondent.**

No. SCBD 3890.

Supreme Court of Oklahoma.

Feb. 15, 1994.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Tom H. Bruner, pro se.

ALMA WILSON, Justice:

The Bar Association filed a complaint against the respondent alleging that he had engaged in unprofessional conduct. A hearing was held and all three members of the trial panel agreed that the complaining witness, Deborah Krater, could not be believed, and that even if she could be believed, her complaint did not establish a violation of the Rules of Professional Conduct. We accept the findings of fact of the trial panel, agree with its conclusions of law and dismiss the complaint.

The facts as found by the trial panel are as follows. The respondent had represented the complaining witness for several years, including a divorce case that had been very difficult and included tangential matters. The respondent had received only a $500.00 retainer fee. After the divorce, the residence of the divorcing parties was sold and at the closing, both parties received money from the sale. The respondent received the portion of his fee that the husband had been ordered to pay. The respondent informed Ms. Krater that she still owed him money. He thought they had agreed on the amount and that she would pay soon. But he had difficulty contacting her after the closing. She experienced more difficulty after the divorce and called him for help. When he asked her about the fee, she replied that she could not get off work and he replied that he would come to her place of work. She agreed.

He subsequently had trouble contacting her again. He did not know that she was trying to avoid contact with her brother who had threatened her life. The respondent went to her place of employment and waited

for her to come out after work. When he saw her, he approached her and handed Ms. Krater a one sentence letter informing her that the balance on her attorney fees was $2,675.00. She initially agreed to allow him to follow her home so that she could get a check, but changed her mind because she did not want him to know where she lived. The respondent believed that she was attempting to avoid payment, which resulted in his becoming angry. He stepped between Ms. Krater and her car, partially blocking her access and so she went back into the building to call law enforcement authorities.

Believing that she had gone in to call the police, he decided to wait in his car. Before the deputy sheriff arrived, he got out of his car, banged on the doors of the building, but was not admitted. After the deputy arrived, Ms. Krater came to the door and told the respondent that she would pay his fee at his office on the following Monday. She did not dispute the amount of the fee.

But Ms. Krater hired another lawyer, who telephoned the respondent and requested an itemized bill. The new lawyer had contacted the original divorce judge and the opposing attorney. This contact had convinced him that the fee was appropriate, and after he received the itemized bill, he would advise his client to pay. But the respondent became angry again over the requirement that he submit an itemized bill and explained that if that were necessary, he would add in everything he had done and sue Ms. Krater for the total amount she owed. The new lawyer requested that the respondent serve him instead of the client, if he decided to sue. The respondent replied that he would not, that he would serve her at work so her co-workers could see what a liar she was. The new lawyer sent the respondent a confirming memo, and later sent another memo verifying Ms. Krater's desire for an itemized statement. The respondent sent a statement showing sixty-nine hours of work on Ms.

Krater's divorce and the other matters. On that same day, the Bar Association received a grievance from Ms. Krater. The respondent never sued her, and she never paid his fee.

The panel concluded that the respondent did not go to Ms. Krater's place of employment to embarrass her or to cause a scene.[1] The panel determined that he had attempted to contact her there and that the contact deteriorated into an embarrassing situation for both parties. The panel stated that it believed the version of the facts reported by the respondent, but disbelieved the complaining witness where the two versions were inconsistent.

The Bar Association alleges a violation of Rules 4.4 and 8.4 of the Rules of Professional Conduct.[2] Rule 4.4 forbids a lawyer from engaging in conduct that has no substantial purpose other than to embarrass a third person during his representation of a client. The panel concluded the rule was inapplicable because the respondent did not intend to embarrass Ms. Krater. Rule 8.4(d) forbids a lawyer from engaging in conduct that is prejudicial to the administration of justice. The panel concluded that this rule had no application because this was a dispute between two people outside the court system. The panel noted that the rule did not proscribe conduct that is prejudicial to the reputation of the organized profession. It finally noted that the panel was embarrassed by the conduct of the respondent, and informed him of that. He apologized on the record. The panel concluded that even if it favored the testimony of Ms. Krater, no violation of the rules was established.

■ Although this Court reviews the facts as reflected in the record, makes its own findings and determines the appropriate discipline, if any, the recommendations of the trial panel are given great weight. *State ex rel. Okla. Bar Ass'n v. Miskovsky*, 832 P.2d

---

1. Witnesses testified that they had heard loud voices and saw the respondent standing in front of Ms. Krater's car door arguing with her.

2. Rule 4.4 provides: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtain-

ing evidence that violate the legal rights of such a person." Rule 8.4(d) provides: "It is professional misconduct for a lawyer to ... (d) engage in conduct that is prejudicial to the administration of justice...." Rules of Professional Conduct, 5 O.S.1991, ch. 1, app. 3–A.

814, 817 (Okla.1992). The Bar Association filed a brief stating its position that the record contains sufficient evidence from the respondent to conclude that he had engaged in personal behavior that was so offensive to his client as to violate the Rules cited. The Bar cites *State ex rel. Okla. Bar Ass'n v. Sopher,* 852 P.2d 707 (Okla.1993), where an attorney was publicly reprimanded for uninvited sexual advances toward a client. The *Sopher* case is clearly distinguishable on its facts.

█ In contrast, the respondent became angry in public with a client over a fee dispute and again becoming angry when talking on the phone with his client's new lawyer. Although he threatened to serve the complaining witness at work in order to embarrass her, he did not do so. The Bar Association argues that his threat demonstrated his true purpose when he confronted his client in the parking lot, that is, to embarrass and harass her. We do not agree. While we do not condone the respondent's actions, the trial panel's findings of fact do not reveal a violation of the Rules of Professional Conduct.

Accordingly, the complaint is DISMISSED. The complainant's application to assess costs is DENIED.

LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

KAUGER and SUMMERS, JJ., not voting.