**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Michael Alan TAYLOR, Respondent.**

**No. SCBD 4217.
OBAD 1279.**

Supreme Court of Oklahoma.

April 15, 1997.

---

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

John Douglas, Clark, Stakem, Wood & Douglas, Oklahoma City, for Respondent.

SUMMERS, Vice Chief Justice.

The Oklahoma Bar Association filed a complaint against Respondent Michael Alan Taylor, alleging violations of Rules 1.5, 1.15, 5.3, 8.1(b), and 8.4(c) and (d) of the Oklahoma Rules of Professional Conduct, and Rules 1.3 and 5.2 of the Rules Governing Disciplinary Procedure. The Professional Responsibility Tribunal found no ethical violations, and recommends dismissal of the complaint. On review we agree.

It is the responsibility of this Court to review the evidence presented to the PRT to determine whether a violation has been shown by clear and convincing evidence. *State ex rel. Okla. Bar. Ass'n v. Perkins,* 757 P.2d 825, 828 (Okla.1988). Our review is *de novo. State ex rel. Okla. Bar Ass'n v. Perceful,* 796 P.2d 627, 629 (Okla.1990).

Michael Alan Taylor is in solo practice, but prior to the filing of this complaint had recently split from his law partner. In the process his law partner took several cases and the bookkeeping logs regarding the case load. The two attorneys had agreed to allow Michael Alan Taylor keep the smaller checks that came into the office after the split.

In April, 1996 Taylor received a check for $1170.00 payable to "Michael Taylor, 325 Dean A. McGee Ave., Oklahoma City, OK 73102." The check, from Crawford and Co. insurance adjusters, noted "Richardson, Juani" as the client. The check also stated it was for attorneys fees as per a court order from a 1990 case. The check noted as the named insured Homeland Stores. Taylor did not recognize the client name, and had his staff inquire at Crawford and Co. if the check indeed belonged to him. The insurance adjuster responded that the correct payee was Michael Taylor. Taylor testified that this looked to be a fee in a workers' compensation matter. He rarely did workers' compensation, but had handled a few cases over the past years, and had referred several to another attorney. He did have cases involving Safeway, the predecessor to Homeland.

After the insurance adjuster assured his staff that the check was correct, Respondent directed that it be deposited into his operating account. He testified that he could not check the bookkeeping logs, as his former partner was in possession of them. Because the check had his proper address listed on it, he felt sure it was a fee from an old case. The check was deposited on April 30, 1996. With this money Respondent paid his payroll, including a salary to himself.

On May 3, 1996, Michael C. Taylor, an attorney in Tulsa, notified Michael A. Taylor that he believed a fee from one of his cases had been mistakenly paid to Michael Alan Taylor. Michael Alan Taylor responded by asking for verification, and upon receipt of verification, agreed to remit the fee to Michael C. Taylor. When Michael C. Taylor did not receive payment within a couple of weeks, he threatened to notify the district attorney's office and filed a grievance with the Oklahoma Bar Association.

Michael Alan Taylor was experiencing financial difficulties and was unable to remit the fee until August 21, 1996. He testified that he was not able to obtain a loan to repay the fees, that his accounts receivable were large, and that he could easily cover the fee once he received the fees owed to him. As soon as he received those fees he remitted the total amount to Michael C. Taylor.

Upon receiving the notification of a grievance and the request to respond from the Bar Association, he timely responded. In his response he stated that the check was made payable to "Michael A. Taylor". It was later determined that the check was payable to "Michael Taylor." Michael A. Taylor testified that this error was not intentional, but was due to his reliance only on his memory as to the check's payee. He said he thought the identity on the check was clear, especially in light of the fact that his proper address was listed on the face of the check.

The PRT found that Respondent committed no ethical violations, and that the incident gave rise only to a debtor-creditor relationship. The PRT recommends dismissal of the complaint. General Counsel for the Bar Association disagrees and urges that Respondent committed several ethical violations. In its brief the Bar concedes that there is insufficient evidence to show a violation of Rule 8.4(c). We address the remainder of the Bar's contentions.

First, General Counsel asserts that Rules 1.5 and 1.15 were violated because Michael A. Taylor accepted money which was not owed to him. Rule 1.5 requires that an attorney's fees be reasonable. Rule 1.15 requires that a client's funds be held in safekeeping, and that if an amount is in dispute, the amount shall be held separate until the

dispute is resolved.[1] The Bar asserts that because Michael A. Taylor never represented the client for which the fees were owed and paid by the check, he accepted an unreasonable fee. The Bar cites no authority for this proposition.

We decline to extend the Rules 1.5 and 1.15 to cover an innocent mistake such as the one at bar. Michael A. Taylor did not perpetrate a fraud or participate in a misrepresentation in order to get the check. It was not even his mistake. It was the mistake of the insurance company which erred in mailing the check to the wrong attorney. Michael A. Taylor never stated that he represented the particular client. He had his staff verify that the check had been sent to the proper person, and was assured by the issuing insurance company that it had. We agree with the PRT and find that there was no violation of Rules 1.5 or 1.15.

■ We next consider whether, as asserted by the Bar Association, Respondent violated Rule 8.4(d). Rule 8.4(d) states that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." It Association asserts that Michael A. Taylor's conduct was prejudicial to the administration of justice by delaying in returning the fees to the proper attorney. The Bar asserts that this conduct contravened an order of the Workers' Compensation Court which directed that fees be paid to the attorney who represented the injured worker.

In *State ex rel. Okla. Bar. Ass'n v. Bourne*, 880 P.2d 360 (Okla.1994), we discussed in detail the application of Rule 8.4(d). We first noted that while the rule has been criticized for its uncertainty and vagueness, it has "been upheld as sufficiently definite for the purpose of a disciplinary proceeding." *Id.* at 361, citing *In re Haws*, 310 Or. 741, 801 P.2d 818, 822 (1990). We determined that the Rule applies in cases in which the direct interference with judicial proceedings is se-vere, or when the conduct is so serious as to prejudice our system of justice as a whole. *Id.* at 362–63.

This Court has found violation of Rule 8.4(d) in instances where an attorney failed to withdraw from cases after he was suspended for misconduct, where an attorney paid a client to make a false affidavit to the Bar Association, and where an attorney counseled his client to lie in court about relevant information needed by the court. *State ex rel. Okla. Bar Ass'n v. Downing*, 863 P.2d 1111 (Okla.1993); *State ex rel. Okla. Bar. Ass'n v. Moss*, 682 P.2d 205 (Okla.1983); and *State ex rel. Okla. Bar. Ass'n v. Hensley*, 661 P.2d 527 (Okla.1983). We have also found that an attorney's conduct violated Rule 8.4(d) when he made unwelcome sexual advances to his client and her mother. We held that his conduct prejudiced our system of justice as a whole. *State ex rel. Okla. Bar. Ass'n v. Sopher*, 852 P.2d 707 (Okla.1993).[2]

In this case we find no violation of Rule 8.4(d). Michael A. Taylor's conduct did not directly interfere with the proper administration of justice or with a legal proceeding. His actions did not affect the legal system as a whole. He repaid the money within four months. The public was not injured, and no client suffered a loss. He did not contravene a direct order of the Workers' Compensation Court, as it was his belief that the fees were owed to him for an old case. We find this belief to have been reasonable. Any violation of the Workers Compensation Court's order was committed by the insurance company in mailing the check to the wrong attorney. Again, we rely heavily on the fact that Michael A. Taylor did nothing to induce the error in payment, and did not attempt to deny or hide the fact that the money was owed to someone else, once it was brought to his attention.

■ Lastly, the Bar Association asserts that Michael A. Taylor violated Rule 8.1(b) of the Rules of Professional Conduct and Rule

---

1. Rule 1.15(c) states:
   When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

2. For a complete listing of this Court's rulings and the rulings of other jurisdictions, regarding instances of misconduct under Rule 8.4(d), see *Bourne*, 880 P.2d at 362–63 n. 3 and n. 5.

5.2 of the Rules Governing Disciplinary Procedure by making a false statement to the Bar Association in his response. Clearly, Respondent erred in his statement averring that the check was made payable to "Michael A. Taylor" when in fact it was made payable to "Michael Taylor." Respondent asserts that this was not an intentional mistake but was due to his reliance only on his memory when making his response. He remembered that the check was made payable to an attorney with the same name as his and at his address. It is undisputed that at the time he made the response, more than two months had passed since his receipt of the check, and that the check was in his possession for only a couple of days. It is also undisputed that Respondent did not obtain a copy of the check from the bank until after the filing of his response.

Rule 8.1(a) states that a lawyer shall not "knowingly make a false statement of material fact" in response to a grievance. Rule 5.2 states that "deliberate misrepresentation shall be grounds for discipline." Notably, both of these rules use the terms "deliberate" or "knowingly." The Bar did not present clear and convincing evidence to show that this misstatement by Respondent was knowing or deliberate. In fact, there is no evidence to show that it was anything other than a mistake. We agree with the PRT's finding that this conduct was not a violation of Rule 8.1 or Rules 5.2 of the Rules Governing Disciplinary Procedure.

We hereby direct that the complaint against Michael A. Taylor be dismissed. The Bar Association has filed a motion to assess costs against Respondent Michael A. Taylor. Because we find no violation of the Rule of Professional Conduct or the Rules Governing Disciplinary Procedure this motion is denied. See Rule 6.16, Rules Governing Disciplinary Procedure; *State ex rel. Okla. Bar Ass'n v. Watson*, 773 P.2d 749 (Okla.1989)(costs cannot be assessed against an attorney when this Court determines that there is no violation of ethical rules).

All Justices concur.