2005 OK 9

### STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

### Phillip John ANDERSON, Respondent.

### No. SCBD 4775.

Supreme Court of Oklahoma.

Feb. 22, 2005.

As Corrected Feb. 24 and Feb. 28, 2005.

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Phillip John Anderson, Pro Se, Nixa, Missouri, for Respondent.

*OPINION*

WATT, Chief Justice:

¶1 The Complainant, Oklahoma Bar Association (the Bar), filed a complaint against Respondent, Phillip John Anderson, a licensed attorney in Oklahoma, pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, App. 1–A., for violations of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, Ch. 1, App. 3–A.

¶2 The Bar alleged Respondent committed specific acts of professional misconduct in three counts of the complaint. In each count, the Bar alleged Respondent violated Rule 1.3, RGDP,[1] and Rule 8.4, ORPC.[2] In

---

1. Rule 1.3, Discipline for Acts Contrary to Prescribed Standards of Conduct, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

the complaint, the Bar alleged the complaining witness, Lee Ann Stroud, accused Respondent of sexual assault against her in her home (Count I); of committing the crime of rape against her in her home (Count II); and of committing the crime of forcible oral sodomy against her in her home (Count III).

## TRIAL PANEL REPORT

¶ 3 The Trial Panel notes in its report that the rape charges filed against Respondent were subsequently dismissed. The Trial Panel included in its report the facts that Respondent admitted having a sexual relationship with Stroud, and that he had had sex with her for the purpose of being hired to handle a medical malpractice case for her.[3]

¶ 4 The Trial Panel heard the live testimony of Stroud and found that Respondent violated the ORPC by taking advantage of his position of trust and power over a client in those circumstances. The Panel also heard evidence of prior complaints of a sexual nature brought by others against Respondent, but which were not pursued. The Panel cited *State ex rel. OBA v. Robert F. Groshon*, 2003 OK 112, 82 P.3d 99, in which a public censure and costs of the proceedings were imposed, finding it similar to the instant case. However, the Panel is of the opinion that Respondent's misconduct in the instant case exceeded that of *Groshon*. It recommends a suspension of two years and one day and the imposition of the costs of this proceeding.

¶ 5 In Complainant's Brief-in Chief, the Bar requests "that an appropriate period of suspension be imposed on the Respondent for the protection of the public and the purification of the Bar." The Bar contends that

there were "clear and convincing violations of every ethics rule mentioned in Oklahoma Ethics Opinion No. 311", adopted October 16, 1998, which is attached to its brief.[4] The Bar also contends Stroud was very vulnerable during the time Respondent represented her and that Respondent was engaging in the same conduct as Dr. Vantine.

## FACTS

¶ 6 Stroud testified about her medical condition at the time Anderson arrived at her house, purportedly to have her sign some papers for her divorce. She testified she was on strong pain medication, OxyContin, following facial surgery at the time, and that the medication clouded her judgment. She stated she also took Ritalin for Attention Deficit Disorder, but did not mix the medications if she was going out. She testified he asked her to rub his back and suggested, crudely, that she needed to have sex with him. She stated he pushed her down on the couch and that they struggled while he held her down.

¶ 7 Stroud testified she told him about the Tulsa lawsuit she had filed against a psychiatric hospital, Laureate, and a psychiatrist there, Dr. Vantine, who treated her for an eating disorder. She alleged Dr. Vantine had initiated a sexual relationship with her during her therapy, at a time when she was extremely vulnerable. She alleged the relationship had resulted in the destruction of her marriage. At the time she hired the Respondent for filing post-divorce contempt proceedings against her former husband, she was looking for another lawyer to handle the Tulsa lawsuit.

¶ 8 Stroud testified there were three to four sexual encounters with Respondent.

2. Rule 8.4, Misconduct, provides at subsection (d):
   It is professional misconduct for a lawyer to:
   . . .
   (d) engage in conduct that is prejudicial to the administration of justice. . . .

3. The medical malpractice case was brought by Stroud against Dr. Jerry Vantine, a psychologist at Laureate Psychiatric Hospital in Tulsa, with whom she had a sexual relationship during her treatment.

4. The Ethics Opinion answered the inquiry:

Will a lawyer who engages in sexual relations with a client violate the Rules of Professional Conduct "Rules" if the lawyer has no pre-existing consensual sexual relationship with the client?

While recognizing the Rules provide no express prohibition against sexual relationships with a client with whom no previous consensual sexual relationship existed, the OBA Ethics Committee opined there is a "significant probability" that such conduct will result in a violation of one or more of the rules. The Committee cited ORPC 1.1, 1.7, 1.8, 2.1 and 8.4(d).

She explained that she felt she had no choice because her parents were paying her legal fees, and she needed the child support and alimony. She did not hire another attorney following the alleged sexual assaults because she felt there was nothing she could do about it, again stating her parents were paying her legal fees. Moreover, she had already had two previous lawyers. Because of the nature of the Tulsa lawsuit, she said it would be "totally unbelievable" that Respondent attacked her. She was embarrassed and humiliated and felt she had no options. She also cited her medical condition at the time, stating she was trying to recover from surgery and was taking medication. She blamed her delay in reporting the sexual assaults on her state of mind at the time.

¶ 9 Stroud stated she thinks the criminal charges against the Respondent were reduced and/or dropped because his attorney obtained her medical records, and the police thought she would be humiliated and embarrassed if they were made public. She also testified that the medical records were obtained without her permission or authorization. When she fired him, she alleged he told her he would insure she lost the Laureate case. He also told her that his wife would leave him, and that it would destroy his family and his work.

¶ 10 Anderson testified he currently lives in Missouri at his parents' house. He is not licensed in Missouri, but intends to become licensed, pending the resolution of this case. He stated he learned from firsthand experience that it is a bad idea to become involved with clients. He testified as to two previous clients with whom he had had a relationship. He began dating his wife while she was a client, and then she was hired as a legal assistant. He stated many female clients had approached him about having a sexual relationship.

¶ 11 He testified he thought there was a specific ethics rule against having a personal relationship with clients, although he did not know which rule it was. He stated he learned he should not engage in personal relationships with clients because of the toll it takes **on him** as the attorney and as a person.

¶ 12 Although Respondent admitted having sex with Stroud, he denied the facts as she testified regarding the first sexual encounter. He testified Stroud went after him for sex, but that he did not pressure her. He admitted he had sex with her in order to become hired to represent her in the Vantine case. He testified that he previously thought Dr. Vantine drugged her and took advantage of her, but that he changed his opinion after talking to her opponent. He explained why it was different for Dr. Vantine to have sex with Stroud while treating her, than for Respondent to have sex with her while representing her. He indicated the difference was in the length of time of the professional relationship, i.e., Vantine treated her for five years, and the fact that Stroud did not depend on Respondent. However, he acknowledged both he and Dr. Vantine were wrong because they were both professionals and had sex with her during their professional relationships. In that sense, he admits it is similar.

¶ 13 During Respondent's testimony, he was asked questions by Ms. Bates of the PRT to determine the level of Respondent's remorse involved in his actions with Stroud. Ms. Bates asked him:

Q. But, Mr. Anderson, I would like to determine what your level of remorse is. You've admitted that you've done wrong. You've admitted that you should be disciplined, and you've admitted that or you've conceded that you've lost so much, but you keep saying her allegations cost me and what she's done cost you, but you've also said that after you secured the Tulsa case, you continued to have sex with her on occasion. Truly, what I would like to hear is "my actions caused me to lose everything,"—the reason for the discipline. Do you take responsibility in that way—or do you still—

A. In this room, no.

Q. Do you still believe it's her allegations that cost you everything?

A. Her false allegations got rape charges filed against me, got me on the front page of the paper and got me in the

newspaper, and that's outside of this room. Inside of this room is my law license and my practice of law, and her false allegations of this room hurt a lot of people other than me, and I'm very angry about that. As far as my law license is concerned, as far as me having sex with her, which as far as I'm concerned isn't really what this needs to be about. I didn't rape her. I didn't assault her. I had consensual sex with somebody who read the contract, was my client, and that was wrong, and that's what I should be disciplined for.

. . .

Q. And I think we've been along this path for a while, so let me go back and try and rephrase it. Initially I was trying to determine what your level of remorse was. That's what started this line of questioning, and this question actually is these rules that you violated were designed to protect clients such as Ms. Stroud. The fact that you violated them means that she is a victim. Do you agree with that?

A. Yes. .

Q. And having said that, I do understand that you see yourself as a victim as well, and you undoubtedly have lost a lot. Okay, I think that's all. Thank you.

## DISCUSSION

¶ 14 In accordance with determining Respondent's level of remorse, the PRT also asked Respondent questions to consider whether he took responsibility for his actions. Initially, Respondent's version of his first sexual encounter with Stroud was diametrically opposed to her testimony. He stated she asked him over; that she told him she wanted to have sex with him because she had not been with a man for over a year; and that she was wearing a Victoria's Secret outfit when he arrived. He stated she had consensual sex with him and that she was not sad that her marriage had ended. Also, he alleged she told him she had sex with a friend of her son's and that she smoked marijuana with her son. He stated he did not know she was taking OxyContin until his preliminary hearing. He blamed the failure

of his marriage and the loss of his practice on the fact Stroud accused him of rape which led to his arrest and negative publicity.

¶ 15 In bar disciplinary cases, this Court exercises exclusive original jurisdiction as a licensing agent. *State ex rel. OBA v. Gasaway,* 1991 OK 33, 810 P.2d 826, 830 (Okla.1991). The ultimate responsibility for deciding whether misconduct has occurred and what discipline is appropriate rests with this Court. *State ex rel. Oklahoma Bar Association v. Giessmann,* 1997 OK 146, ¶¶ 11, 948 P.2d 1227, 1229. Our duty to review the facts to determine if an ethical violation occurred is non-delegable. *State ex rel. Oklahoma Bar Association v. Taylor,* 2000 OK 35, ¶¶ 4, 4 P.3d 1242, 1247. Our review of the record is *de novo, State ex rel. OBA v. Patmon,* 1998 OK 91, 975 P.2d 860, *State ex rel. OBA v. Wolfe,* 1996 OK 75, ¶¶ 26, 919 P.2d 427, 432, in which we conduct a non-deferential, full-scale examination of all relevant facts; the recommendations of the trial panel are neither binding nor persuasive. *State ex rel. Oklahoma Bar Association v. Taylor,* supra.

¶ 16 In *State ex rel. Oklahoma Bar Association v. Groshon,* supra, an attorney attempted to flirt with, hug, kiss and touch in a sexual manner, his divorce client. His actions were unwelcome acts toward a client in a vulnerable position. This Court ordered the Respondent to be disciplined by a public censure, in addition to the costs of the proceeding. That discipline was imposed because the Respondent showed remorse and because the incident appeared to be an isolated event.

¶ 17 Comparing *Groshon* to the instant case, however, we have no similar evidence of mitigation. The remorse Respondent acknowledged was expressed only in terms of what Stroud's accusations cost him. He also testified that his motive in having sex with Stroud was to get the Vantine case, claiming it was pretty clear she would hire him if they had sex. This was not an isolated event, as there was evidence that other female divorce clients made similar accusations against him.

¶ 18 Respondent testified he believed at the time that a rule did exist in the ORPC

which prohibited a lawyer from engaging in a sexual relationship with a client, although he did not know which rule. He acknowledged such a relationship was wrong because it is not in the client's best interest to have sex with the lawyer representing her. Having so acknowledged this, however, this Court notes that Respondent blames Stroud for the sexual relationship. However, it is not this Court's duty to oversee the conduct of Respondent's *clients.*

¶ 19 We also note Respondent acknowledges his behavior was wrong. However, the evidence overwhelmingly supports the PRT's finding that Respondent used sex in an attorney-client representation to advance his own cause with a particularly vulnerable client. He testified that he feels remorse for having sex with a client and takes responsibility for his actions. In contrast, however, he also testified that **Stroud's accusations** caused him to lose everything, which caused him remorse. We find his testimony about how Stroud ruined his life belies his professed remorse. He sees himself as the victim.

## CONCLUSION

■ ¶ 20 We find the Respondent violated ORPC 8.4, as conduct prejudicial to the admission of justice. See *OBA v. Sopher,* 1993 OK 55, 852 P.2d 707.[5] Under Rule 1.3, RGDP, it is not required that Respondent be convicted of a crime before discipline is imposed. The Acts of Respondent in pursuing this sexual relationship with Stroud is "contrary to prescribed standards of conduct" which "would reasonably be found to bring discredit upon the legal profession." See Rule 1.3, RGDP. In addition, although the Bar did not specifically allege in its complaint a violation of ORPC 2.1, requiring independent professional judgment in representing a client, the Legal Ethics Committee gave the following advice in Ethics Opinion 311 re-

garding Rule 2.1 which is particularly applicable to this case. It stated:

> If a lawyers (sic) advice to a client is based, in part, upon an effort to initiate or to promote sexual relations with a client, the lawyer violates the Rules. Sexual relations with a client may undermine the objective detachment which is a normal incident of independent professional advice. This is particularly true in situations where the lawyer, in attempting to initiate or to promote sexual relations, takes action or renders advice which is not in the clients (sic) best interests.

■ ¶ 21 This Court accepts the findings in the Trial Panel Report that Respondent violated the ORPC "by taking advantage of his position of trust and the position of power over a client under the circumstances." We further agree with the Trial Panel that Respondent's conduct exceeded that shown in *Groshon,* where a public reprimand was imposed as discipline. We impose a suspension of one year, plus costs of this proceeding.

¶ 22 Respondent is suspended from the practice of law for one year from the date this opinion is filed. Respondent is further assessed the sum of $1913.72 as costs of this proceeding to be paid within ninety (90) days after this opinion is filed.

¶ 23 SUSPENSION OF ONE YEAR AND COSTS OF THIS PROCEEDING.

WINCHESTER, V.C.J., LAVENDER, HARGRAVE, KAUGER, EDMONDSON, COLBERT, JJ., concur.

OPALA, J., dissents in part.

TAYLOR, J., dissents.

"I would impose a suspension of two years and one day."

5. In *Sopher,* this Court considered appropriate discipline for sexual misconduct by an attorney. The offense there was the unwelcome offensive touching of a client and her mother. This Court examined other jurisdictions because of a lack of case authority in Oklahoma. This Court cited numerous cases and the level of punishment for a particular offense. We noted a two-year suspension was deemed appropriate discipline in a case from New Hampshire for which the attorney had engaged in sexual relations with a client under the care of a psychiatrist who was emotionally fragile. See *Drucker's Case,* 133 N.H. 326, 577 A.2d 1198 (1990). Sopher was disciplined with a public reprimand.

OPALA, J., dissenting in part.

¶ 1 **This case is neither about rape nor about remorse.** It is **all** about a **dispassionate** assessment of **appropriate** discipline to be imposed upon a lawyer who admits to having had a short-lived affair with a client, a then-vulnerable adult female with questionable capacity for consenting to sexual intimacy.

¶ 2 I join and enthusiastically welcome the Bar's increased protection of the lawyers' clientele from sexual predators in the profession. Administering excessive discipline in a few cases is not the way to accomplish the Bar's desired goal. Consistent and even-handed enforcement of discipline is to be preferred over an occasional splash of over-powering fervor.[1] Law is **not a moral discipline** that measures the degree of one's civil culpability by ecclesiastical standards for gauging the gravity of man's sin.[2] Viewed in realistic terms, law is an **instrument of social control with its own norms of fairness and propriety.**[3]

¶ 3 I concur in today's pronouncement that subjects the respondent to professional discipline but dissent from imposition of the lengthy suspension. Respondent's license should be suspended for a shorter period.

1. *State ex rel. Oklahoma Bar Ass'n v. Sopher,* 1993 OK 55, 852 P.2d 707, 711 (Opala, J., dissenting).

2. *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 506, 72 S.Ct. 777, 783, 96 L.Ed. 1098 (1952); *Torcaso v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); *Guinn v. Church of Christ of Collinsville,* 1989 OK 8, 775 P.2d 766, 770.

3. Hans Kelsen, WHAT IS JUSTICE?: JUSTICE, LAW, AND POLITICS IN THE MIRROR OF SCIENCE 1, 1, 4 (1957); Hans Kelsen, General Theory of Law and State 8–9 (Harvard University Press, 1945); Lon L. Fuller, The Morality Of Law 9 (2d ed.1969).