2012 OK 64

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Michael Joseph CORRALES, Respondent.**

**Nos. SCBD–5788, OBAD–1881.**

Supreme Court of Oklahoma.

June 26, 2012.

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for the Complainant.

Charles F. Alden, III, Alden Dabney, Oklahoma City, Oklahoma, for the Respondent.

EDMONDSON, J.

¶1 The Oklahoma Bar Association (Bar) filed a complaint pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), against the Respondent, Michael Joseph Corrales ("Respondent" or "Corrales"), alleging violations of Rule 8.4(b), Oklahoma Rules of Professional Conduct (ORPC), and Rule 1.3, RGDP, that warrant the imposition of professional discipline.[1]

¶2 Count I alleged that a criminal information was filed against the Respondent in *State of Oklahoma v. Michael Joseph Corrales*, charging him with one count of misde-

meanor Assault and Battery pursuant to 21 O.S. § 644(B), based on allegations that on September 22, 2010, he willfully and unlawfully committed an assault and battery upon his girlfriend, Kimberly Leonard, by grabbing her hair and striking her head into the dashboard of a vehicle and grabbing her about the arms and neck with force and violence. The offense is punishable by imprisonment up to ninety (90) days and/or a fine up to one thousand dollars ($1,000.00).

¶3 On February 10, 2011, the Respondent entered an Alford plea to the charge.[2] He was sentenced to a one (1) year deferred sentence, placed on active supervision of the Comanche County District Attorney's Office and ordered to comply with certain conditions of probation: that he not use illegal drugs or become intoxicated on any substance; that he conduct himself in all respects as a good and peaceable law abiding citizen; that he remain away from the premises of Gert's Pub & Grub located in Lawton, Oklahoma; that he obtain a drug and alcohol assessment and follow the recommendations of the assessment; and that he complete anger management counseling. Corrales was also ordered to pay a fine of $1,000.00, plus court costs. .

¶4 On March 8, 2011, the State filed a Motion to Accelerate Deferred Judgment in CM–2010–940 after Kimberly Leonard called 911 reporting that Corrales was assaulting her. The parties agreed that in the interests of justice the Motion to Accelerate Deferred Sentence should be withdrawn in return for the additional probationary condition that Corrales wear an alcohol monitoring device until August 31, 2011, and pay a supervision fee for it.[3]

---

1. Rule 8.4(b), Oklahoma Rules of Professional Conduct, 5 O.S.2011, Ch. 1, App. 3–A, provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.
Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, provides:
"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or

not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

2. An Alford plea admits that the prosecution's evidence, if believed by the trier of fact, is sufficient to support a conviction.

3. The Respondent told the Trial Panel that Kimberly Leonard called 911 in an incoherent state to report that he was harassing her and that after hearing the 911 tape, the State withdrew the application. The Respondent testified that he

¶ 5 Counts II and III of the complaint alleged that on November 16, 2010, a criminal information was filed in *State of Oklahoma v. Michael Joseph Corrales*, Case No. CM–2010–1084, in the District Court of Comanche County, Oklahoma, charging him with one count of misdemeanor assault and battery pursuant to 21 O.S. § 644(B) upon Courtney Dean, alleging that he threw her on the ground and hit her on the head with a glass. On the same date, an information was filed against Respondent in Case No. CM–2010–1085, in the District Court of Comanche County, Oklahoma, charging him with one count of misdemeanor assault and battery pursuant to 21 O.S. § 644(B) upon Christee Whittig, alleging that he threw her to the ground, hit her with a glass and choked her until she almost passed out. Each offense is punishable by imprisonment up to ninety (90) days and/or a fine up to one thousand dollars. On February 11, 2011, Corrales entered a plea of *nolo contendere* in CM–2010–1084 and CM–2010–1085 and was sentenced to a one-year deferred sentence in each case. The sentences in all three misdemeanors were to run consecutively, resulting in a total of three years, with the same probationary terms imposed.

¶ 6 The matter was tried before a Trial Panel of the Professional Responsibility Tribunal on December 13, 2011. The Respondent and the Bar entered into stipulations regarding the pleas set out in Counts I–III of the complaint and the Respondent's previous discipline-free record.[4] Corrales testified before the Trial Panel and District Judge Alan McCall, Presiding Judge of the Fifth Judicial District, testified on the Respondent's behalf. The deposition of Corrales' psychiatrist, Dr. Masooda Burki, was introduced in evidence. It was stipulated that, if called, Bar investigator Tommy Butler would testify that the Respondent had been cooperative throughout the investigation, that he expressed appropriate remorse for his conduct and that he was cooperative in producing all documents requested by the Bar.

¶ 7 The Trial Panel recommended to this Court that discipline of public censure, with the same probationary requirements set by the District Court of Comanche County, was appropriate in the circumstances. Additionally, they requested that Corrales volunteer to make himself available to speak at accredited law schools to benefit lawyers who are in need of help of the kind he received. Our review is *de novo* and we are not required to accept the recommended discipline. *State ex rel. Okla. Bar Ass'n v. Wilburn*, 2006 OK 50 ¶ 4, 142 P.3d 420, 422.

¶ 8 Corrales was divorced and raising his three children. In the summer of 2009, he met Kimberly Leonard, a twenty-three year old woman who began helping him out with his seven-year-old daughter. They dated and began living together in December of 2009. Corrales testified that his son had been very active in sports activities such as football, wrestling and baseball, and that he had been kept very busy for many years following him or coaching him. When his son graduated in May of 2010, the Respondent found himself with a "lull" in his life and he tried to fill it by pursuing "the wrong avenue." Judge McCall stated that, in his opinion, this was "a dose of the middle age crazies." He did not think it has affected the Respondent's ability to be a good lawyer.

---

had an alibi witness and a receipt from the restaurant where they ate that evening. Tr. pp. 66–68.

4. The Respondent stipulated to his Alford plea to the misdemeanor assault and battery of Kimberly Leonard in CM–2010–940; he stipulated to his pleas of *nolo contendere* to the misdemeanor assault and battery of Courtney Dean in CM–2010–1084 and Christee Whittig in CM–2010–1085. Respondent stipulated that he received one (1) year deferred sentences in each case, to run consecutively. The parties stipulated that the Respondent had successfully practiced law for twenty-three years without incident and that except for the incidents alleged in the complaint,

the Respondent had never before been charged with an ethical infraction or been disciplined by the Supreme Court or any other court. The incidents did not affect any attorney-client relationship nor did they involve the loss of money by a client or third party. The Respondent has been in compliance with the terms and conditions of his supervised probation. As a result of the incidents alleged in the complaint, the Respondent took affirmative steps, including psychiatric evaluation and treatment at the hands of Dr. Burki, as ordered by the court, and he continues to have periodic counseling by Dr. Burki. Joint Exhibit 56.

¶ 9 Corrales was a candidate for legislative office for the November 2010 election and he was formerly a municipal judge in Lawton.[5] The cases generated an enormous amount of publicity. The Trial Panel questioned the Respondent about the incidents. Kimberly Leonard told the police that she and the Respondent were arguing in the car on September 22, 2010, and that he became angry and struck her head against the dash four times and that when she tried to exit the vehicle, he pulled her back in. A day after the misdemeanor charge was filed, Kimberly Leonard recanted her story by letter[6] to the District Attorney, Fred Smith, stating that she had mixed prescription medicine and alcohol that evening and that she became upset and tried to persuade Corrales to stop and let her out of the car, but he refused, saying that it wasn't safe. As he slowed to turn into a housing addition, she opened the door and jumped from the vehicle, hitting her head and scraping her elbows and shoulder.

¶ 10 When questioned about the altercation at Gert's Pub & Grub on November 16, 2010, Corrales stated that a man followed Kimberly Leonard to the restroom and attempted to go in the women's restroom. When Kimberly returned, she began berating the man who came into the bathroom and the man's sister jumped up and started yelling at Kimberly. Corrales was returning from the restroom and tried to break them up. He grabbed the woman and a bouncer grabbed Kimberly to pull them apart. The woman's girlfriend was bartending and jumped over the bar and began attacking Corrales. Corrales stated that he doesn't really remember what happened because he blacked out, but there is no doubt in his mind that he fought with them and did what he was charged with.

¶ 11 Following the incident at Gert's Pub, Corrales voluntarily sought counseling because he realized that his life was spiraling out of control and that he needed help. He began counseling with a psychiatrist, Dr. Burki, in November 2010, before being ordered to obtain counseling by the court. Dr. Burki's diagnosis was "adjustment disorder with a depressed mood." At the time of her deposition, she had seen Corrales for approximately ten sessions and she stated that he does not have the problems he had when he first saw her. A letter from Dr. Burki dated January 27, 2011, states that Corrales was referred for assessment and treatment of anger problems; but that during the evaluation process and in continued sessions thereafter, it was obvious to her that Corrales did not have a history of anger issues and did not exhibit anger symptoms at any time during the treatment process. She reported that Corrales successfully completed the anger management process and followed through with any recommendations or suggestions made to him. Dr. Burki recommended that Corrales not consume hard liquor and that he avoid being around Kimberly Leonard. Corrales testified that he asked Kimberly Leonard to leave and she moved out of his house in October 2010. He testified that she lives in Tulsa, having moved there in May of 2011, and that they remain in contact. Corrales testified that he hasn't drunk hard liquor again, that he occasionally drinks beer, but mostly he drinks non-alcoholic beer. It was not a condition of his probation that he not drink alcohol following the alcohol bracelet monitoring. His hair follicle test for drugs was negative.

¶ 12 Presiding District Judge Alan McCall testified that he has known Corrales for at least 25 years, both personally and professionally. Judge McCall was surprised by the charges because he believed that the allegations were out of character for Corrales.

---

5. The Respondent was a candidate for the House of Representatives, District 64, but was defeated. The Respondent was a municipal judge in Lawton, Oklahoma, for approximately nine years, until the end of October 2009. Tr. p. 28.

6. A typed copy of the letter dated September 27, 2010, is Exhibit 40. Exhibit 11 is a handwritten letter from Kimberly Leonard to Judge Warren, filed in the case in February 11, 2010, restating that she jumped from the car and stating that Corrales is not guilty of the charge. Exhibit 6 is a letter from Kimberly Leonard written September 27, 2010, filed in CM–2010–940, stating that she and Corrales were engaged and that "this was a big misunderstanding." Exhibit 27 is a deposition of Kimberly Leonard taken by Corrales' attorney, Arthur South, at his office on December 9, 2010, in which Leonard states Corrales did not hit her head on the dashboard, but that she jumped out of the moving vehicle.

Judge McCall coached little league teams at the same time as Corrales did and they would see each other at the ballpark several times a week. He spoke highly of Corrales' character as an honest and forthright lawyer. When questioned by the Trial Panel whether he has ever seen evidence of Corrales losing his temper while representing a client or appearing intoxicated, Judge McCall answered, "Absolutely not." Neither had he seen any evidence of his anger on the softball field as a coach of Little League teams. He described Corrales as being very courteous to his staff and that of other judges and that "he's there when he's supposed to be. He's prepared." Judge McCall stated that he has not seen any effect on Corrales' ability to be a good lawyer.

¶ 13 Judge McCall had spoken with Corrales about the publicity surrounding the incidents and Corrales expressed remorse and embarrassment because any time that a lawyer or judge ends up on the front page of the newspaper, it negatively impacts the profession. Judge McCall was convinced that Corrales was remorseful and recognized the disrepute that his misconduct brought on his family and the legal profession. He believed that a private reprimand would be sufficient to discipline Corrales, but that a public reprimand was more appropriate due to the publicity. Judge McCall stated that he has never seen anything inappropriate in Corrales' representation of his clients and that he believes Corrales possesses the competency and learning in the law to represent clients.

¶ 14 The Respondent does not dispute the violation of Rule 8.4(b), ORPC, and Rule 1.3, RGDP. It remains for this Court to determine what discipline is appropriate in this matter. In determining appropriate discipline, we must decide each case based on its particular facts, and we look to similar cases for guidance. Attorneys with misdemeanor criminal charges have faced discipline ranging from public reprimand to public reprimand with probation, to public reprimand with a thirty-day suspension. In *State ex rel. Okla. Bar Ass'n v. Murdock*, 2010 OK 32, 236 P.3d 107, the former general counsel for the Oklahoma Bar Association was charged with

two counts of sexual battery. One count was dismissed and Murdock entered an Alford plea on the second count, which was reduced to a misdemeanor charge of outraging public decency. Murdock had no previous disciplinary actions, no clients were involved, he admitted his improper acts and accepted full responsibility for his them, and he was individually and professionally humiliated by his actions and the attendant publicity. Murdock satisfied all probationary conditions associated with his plea, sought medical help, sought and participated in addiction treatment and counseling and assisted in the treatment of others with addictions. We imposed discipline of public censure in that matter.

¶ 15 In *State ex rel. Okla. Bar Ass'n v. Wilburn*, 2006 OK 50, 142 P.3d 420, Wilburn received a public reprimand after pleading guilty to two misdemeanor charges of Outraging Public Decency, reduced from two counts of felony Sexual Battery. Wilburn was charged with lewdly touching two female security guards at the Tulsa County Courthouse. Wilburn pled guilty and received a one-year suspended sentence on each count, to run concurrently, and was given forty (40) hours of community service. Wilburn was charged with violating Rule 8.4(b), ORPC, and Rule 1.3, RGDP. In spite of the mitigating factors that Wilburn had (no client was involved, no previous grievances had been filed against him, and he had been cooperative and remorseful), we rejected the recommendation of the Trial Panel and the Bar that a private reprimand was appropriate discipline. We stated that public reprimands serve to protect the public and advise other members of the bar that such conduct will not be tolerated. *Id.*, 2006 OK 50, ¶ 13, 142 P.3d at 424.

¶ 16 Public censure with a one-year probationary period was imposed in *State ex rel. Okla. Bar Ass'n v. Garrett*, 2005 OK 91, 127 P.3d 600, after Garrett pled guilty to misdemeanor battery charges, reduced from two counts of felonious sexual battery, for sexually assaulting two women at different times while he was intoxicated. Garrett received one-year suspended sentences on each count,

to run concurrently and was required to continue alcohol treatment while on probation.

¶ 17 A suspension of thirty days was imposed in *State ex rel. Oklahoma Bar Assn. v. Hayes*, 2011 OK 71, 257 P.3d 1000. Hayes was arrested and charged with felony assault with a dangerous weapon against his ex-wife's boyfriend, Adams. Hayes, his ex-wife and Adams had a history of turbulent relations, with general harassment by all parties continuing over the course of several months. After an argument with Adams, Hayes specifically sought out Adams by driving to his job to antagonize him. He left an enlarged copy of an explicit text message on Adams' vehicle, then called Adams at work and reported what he had done. Adams claimed that Hayes hit him with his car and he called the police; Hayes denied it. The charge was reduced to a misdemeanor and Hayes entered an Alford plea. He was given a suspended sentence of ninety (90) days. The Bar charged Hayes with violations of Rules 8.4(b), ORPC and Rule 1.3, RGDP. Hayes denied any violation of the rules. Hayes had practiced law for ten years without discipline from this Court (he had one private reprimand from the Bar). He had completed of 94 hours of psychological therapy and voluntarily completed an anger management course. Hayes had successfully completed the terms of his suspended sentence. Hayes' conduct did not involve an attorney-client relationship and he cooperated with the Bar. In imposing discipline of suspension for thirty days, this Court rejected the Bar's recommendation of public censure after considering Hayes' extreme lack of judgment in handling the ongoing situation with Adams. Hayes did not express remorse for his actions; he expressed regret that his actions *could be* interpreted negatively toward the legal profession. His actions were calculated, not the result of overindulging in alcohol or drugs.

We deemed a period of suspension appropriate to protect the public and to advise other members of the bar that such behavior is not acceptable.

■ ¶ 18 We may consider mitigating circumstances when determining appropriate discipline. *State ex rel. Okla. Bar Ass'n v. Murdock*, 2010 OK 32, ¶ 12, 236 P.3d 107, 113. Corrales successfully practiced law for twenty-three years without being charged with any ethical infractions or being disciplined by this Court or any other court. His conduct did not involve an attorney-client relationship. Corrales is remorseful and ashamed of his conduct, and he spoke about his remorse to Judge McCall. He has been in compliance with the terms and conditions of his supervised probation and has undergone psychiatric evaluation and treatment as ordered by the trial court.[7] Because the Respondent has not completed his deferred sentences, a probationary period is appropriate.

¶ 19 On *de novo* review of the record, we find that the Bar has established by clear and convincing evidence that the Respondent's conduct violated Rule 8.4(b), ORPC, and Rule 1.3, RGDP. The Trial Panel has recommended discipline of public reprimand and probation on the same terms and conditions imposed by the district court of Comanche county.[8] The Respondent agrees with the Trial Panel and requests that this Court impose the recommended discipline after our *de novo* review. We find the discipline recommended by the Trial Panel to be appropriate in this matter. The Respondent stands publicly reprimanded, with probation under the same terms and conditions imposed by the district court until his deferred sentences have been served. The Respondent is ordered to pay the costs of the action in the amount of $1,363.23 within sixty (60) days of the date of this opinion.[9]

---

7. The drug and alcohol assessment, Complainant's Exhibits 44 through 47, along with Dr. Burki's session notes, Complainant's Exhibit 49, were placed under seal by a protective order, sought by the Complainant, entered by the Presiding Master of the Professional Responsibility Tribunal on December 13, 2011. Tr. pp. 6 and 18.

8. The Bar submitted the *Hayes* and *Garrett* cases for our consideration and stated that, "in the

event the Court finds the Respondent's conduct does not warrant a period of suspension," then the Respondent should be, at the very least, publicly censured and placed on probation for the duration of his supervised probation in Comanche county. Complainant's Brief, p. 13.

9. The Bar filed an Application to Assess Costs in the amount of $1,363.23 on January 12, 2012.

THE RESPONDENT IS PUBLICLY REP-
RIMANDED AND IS PLACED ON
PROBATION DURING THE TERM
OF HIS DEFERRED SENTENCES.

¶ 20 COLBERT, V.C.J., KAUGER,
WATT, WINCHESTER, EDMONDSON,
REIF, GURICH, JJ., —concur.

¶ 21 TAYLOR, C.J., with whom COMBS,
J. joins, Dissenting: "I would suspend the
Respondent from the practice of law."

On January 25, 2012, the Respondent filed a
response in which he stated that he did not

object to the Application.