2017 OK 56

**STATE of Oklahoma, EX REL. OKLAHOMA BAR ASSOCIATION, Complainant**

v.

**W. Mark HIXSON, Respondent.**

**SCBD No. 6453**

Supreme Court of Oklahoma.

FILED June 20, 2017

Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant,

Charles F. Alden, III, Jack S. Dawson, Oklahoma City, Oklahoma, for Respondent.

## OPINION

WATT, J.:

¶1 On November 1, 2016, the OBA initiated this summary disciplinary proceeding against Respondent, pursuant to Rules 7.1 [1]

---

1. Rule 7.1, 5 O.S. 2011 ch. 1, app. 1–A:
   **Criminal conviction of lawyer**
   A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a

and 7.2[2] of the Rules Governing Disciplinary Proceedings (RGDP). An Order of Immediate Interim Suspension was entered on November 14, 2016.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Respondent was admitted to practice law in Oklahoma in September, 1992. This is Respondent's first disciplinary matter before this Court. Prior to the interim suspension, Respondent was in private practice primarily representing criminal defense clients. At the time of the incident, he had been in practice for 24 years. Respondent solicited prostitution on two different occasions from his criminal defense client, S.R., who was 25 years old, single, unemployed, and had a newborn infant. Respondent has known S.R. since 2011; he represented her when he worked as a public defender. Since then, he has represented S.R. relating to multiple criminal charges.

¶3 Respondent and S.R. never engaged in a physical sexual relationship. There is no evidence in the record that there was any physical touching between them. Respondent's crimes occurred through him soliciting his client, via text message, to engage in prostitution. Respondent initiated and continued a sexual dialogue with his client, S.R. via text message for almost seven weeks. The basis for this summary disciplinary proceeding arises from the criminal charges and his subsequent pleas of nolo contendere.

¶4 S.R. retained Respondent in April, 2016 to represent her on municipal charges for possession of drug paraphernalia. Because she was on a deferred sentence from a district court case, a conviction in municipal court could cause the local district attorney to seek a revocation of her deferred sentence.[3] She had a history of drug abuse and expressed fear that the biological father would seek custody of her baby.[4] A mere twenty days before this text dialogue began, S.R. had given birth; she was unemployed and a single mother to her three week old daughter.

¶5 On the night of June 28, 2016 at 10:18 p.m., Respondent sent a text to S.R. advising her that the municipal cases were dismissed and it was likely the charges would not be reported to the Oklahoma State Bureau of Investigation. He next suggested S.R. take him to lunch instead of re-paying $20. A text conversation then followed with Respondent quickly shifting the "lunch" plan to dinner and a movie. Four hours after this initial text, Respondent crossed a line. He asked his client if S.R. wanted him to be a "gentleman" and asked her if she wanted him "to keep my hands off you?" S.R. replied by asking Respondent if it was "ok to be talking about over text."[5] Respondent assured her that "[t]exts can be deleted."[6] He then made it clear that he desired a physical relationship.[7]

plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal.

**2.** Rule 7.2, 5 O.S. Supp. 2014, ch.1, app. 1–A:

**Transmittal of record relating to conviction**
The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents shall also be furnished to the Chief Justice by the General Counsel within five (5) days of receiving such documents. Such documents, whether from this jurisdiction or any other jurisdiction shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules.

**3.** *State ex rel., Okla. Bar Ass'n v. W. Mark Hixson,* SCBD 6453, Transcript, January 26, 2017, pps. 162–164; OBA Exhibits, January 26, 2016, Ex. 6.

**4.** *OBA v. Hixson,* SCBD 6453, Transcript, January 26, 2017, pps. 189–191.

**5.** *OBA v. Hixson,* SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, p: 7.

**6.** *OBA v. Hixson,* SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, p. 8.

**7.** *OBA v. Hixson,* SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, p. 9.

¶ 6 Respondent continued to escalate the text dialogue. By 1:00 the following afternoon, 14 hours after his initial suggestion for "lunch," he offered to take S.R. on a shopping spree to Victoria's Secret and he made crude suggestions. He admitted that he had "always had a thing for [S.R.]"[8] and he had "liked [her] for years!"[9] Respondent continued making inappropriate sexual advances via text message toward his client and requesting she text him photographs of her body and give him a "preview." S.R. sent some photos of her unclothed body via text. Respondent said he liked what he was seeing, but he "would like to get the real thing!"[10] Within 5 days of his initial text suggesting "lunch," he solicited S.R., offering her $100 for the "real thing."[11] S.R. let him know that "[r]egardless of you think [sic.], I haven't ever done that before."[12] Respondent continued sending sexual text messages to S.R. About one month later, he solicited sex from his client, asking how much she would charge for "straight sex" and what else she would be willing to do and the cost.[13] His client *never* initiated the sexual text dialogue and *never* solicited Respondent. His actions were solely driven by Respondent's private motivations.

¶ 7 Respondent continued to text his client over a span of seven weeks making repeated requests for a sexual relationship with S.R. and sought pictures of her undressed body.[14] There was a clear imbalance of power between S.R. and Respondent. She was indigent and struggling to obtain state supported benefits for food and healthcare for herself and her infant. S.R. had a history of drug abuse, and Respondent had just completed defending her on drug related municipal charges. The relationship between S.R. and the father of her infant was strained. In spite of these many known hardships afflicting his client, Respondent continued to send text messages pressing her for a sexual relationship. Even when S.R. would express how overwhelmed she was feeling with her life situation and at a breaking point, Respondent continued the sexual text dialogue asking to see her and to physically consummate this relationship.

¶ 8 The final solicitation for prostitution from Respondent occurred at a time that S.R. was likely at her most vulnerable point. Respondent sent another text message pressing to see her. S.R. responded letting him know that the Department of Human Services (DHS) had removed her baby from her home and that the police were going to be filing for a warrant and pressing charges against her. When she responded that there is no use in discussing the charges with Respondent because she has no money, he asked her if she would "want to do favors for a fee?"[15]

¶ 9 It was shortly after this last solicitation that S.R. was arrested. After she was in the physical custody of the police, a text message was received from Respondent. The police recognized the Respondent's name and noted that the context of the text message seemed inappropriate and out of line for an attorney-client communication. The police conducted a search of S.R.'s cell phone. After searching her phone, the police next obtained a warrant so they could search Respondent's cell phone. The search revealed the voluminous text messages between Respondent and S.R. and

8. *OBA v. Hixson*, SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, p. 13.

9. *OBA v. Hixson*, SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, p. 13.

10. *OBA v. Hixson*, SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, p. 30.

11. *OBA v. Hixson*, SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, pps. 30–31.

12. *OBA v. Hixson*, SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, p. 31.

13. *OBA v. Hixson*, SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, p. 52.

14. *OBA v. Hixson*, SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, pps. 1–83.

15. *OBA v. Hixson*, SCBD 6453, Hearing Exhibits, January 26, 2017, Exhibit 5, Messages from Mark Hixson's Cell, p. 70.

the prostitution solicitations made by Respondent.

¶ 10 The local district attorney charged Respondent with two separate misdemeanor counts of soliciting prostitution: (1) asking S.R. how much money she would charge for "straight sex," and (2) offering to S.R. that he would trade a legal fee to represent her in a criminal matter for "favors."[16] On October 28, 2016, Respondent entered a plea of nolo contendere to the two misdemeanor crimes.[17] The district court deferred sentencing until October 27, 2017.[18] Respondent completed 25.5 hours of community service prior to entering his plea and the district court did not require Respondent to be supervised during the period of deferment.

¶ 11 Prior to this incident, Respondent held leadership positions with the OBA, his church, the local county bar association, and community service organizations. Respondent's arrest and subsequent plea were widely reported in the local media. Following his arrest and local media attention, Respondent voluntarily resigned from these leadership positions.

¶ 12 A hearing before the PRT occurred on January 26, 2017 for the limited scope of hearing testimony on the issue of mitigation and making a recommendation of appropriate discipline. Respondent expressed remorse and embarrassment for the impact his actions had on his family, his profession, his church, and community organizations. Noticeably absent from his testimony was Respondent's lack of remorse toward S.R., his client and the victim of his crimes. A member of the PRT raised this issue and noted that in her opinion, S.R. was at the top of the list of people who were victims of his behavior. She practically coaxed Respondent to testify about his remorse toward his client. He was unable to do so. Instead, Respondent deflected his actions turning it on his client, pointing out that "for being 25, [S.R. was] not completely unworldly, if you understand. I mean, she's not a—she's not a baby."[19] Respondent was incapable of showing empathy or remorse to his victim. Respondent's callous indifference to his client is distasteful to this Court. The PRT as well as the OBA both noted Respondent's failure to express remorse for the impact his actions had on his client.[20]

¶ 13 It is deeply disturbing to this Court that Respondent attempts to shift any responsibility to his client, the victim of his calculated and premeditated crimes and professional misconduct. Respondent expressed that he had a long-standing attraction and desire for S.R., that spanned "years." The *eighty-three* (83) pages of text messages between Respondent and S.R. paint an unmistakable picture. Respondent initiated this sexual dialogue and he alone pursued a sexual relationship, it was not consensual. Moreover, at the moment S.R. is at her most vulnerable, Respondent urges her again for a sexual relationship offering she could do "favors" for a fee. The pursuit of a sexual relationship was independently driven by Respondent.

## STANDARD OF REVIEW

¶ 14 This Court has exclusive original jurisdiction in bar disciplinary matters to exercise its constitutional, non-delegable power to regulate the practice of law and ethics. *State ex rel. Okla. Bar Ass'n v. Passmore*, 2011 OK 90, 264 P.3d 1238, *State ex rel. Okla. Bar Ass'n v. Whitebook*, 2010 OK 72, 242 P.3d 517. Protection of the public and purification of the Bar are the primary purposes of disciplinary proceedings rather than

---

**16.** *State of Oklahoma v. Wendall Mark Hixson*, Case No. CM-2016-465, Information, filed September 28, 2016.

**17.** *State of Oklahoma v. Wendall Mark Hixson*, Case No. CM-2016-465, Plea of Nolo Contendere Summary of Facts, filed October 31, 2016. (Note: this document was signed and dated October 28, 2016, but was not filed of record with the court clerk until October 31, 2016).

**18.** *State of Oklahoma v. Wendall Mark Hixson*, Case No. CM-2016-465, Plea of Nolo Contendere Summary of Facts, filed October 31, 2016.

**19.** *OBA v. Hixson*, SCBD 6453, Transcript, January 26, 2017, p. 202.

**20.** *OBA v. Hixson*, SCBD 6453, Report of the Trial Panel, filed March 2, 2017, Complainant's Proposed Finding of Fact and Conclusions of Law filed February 16, 2017.

to punish the accused lawyer. *State ex rel. Okla. Bar Ass'n v. Givens*, 2014 OK 103, 343 P.3d 214. This Court will conduct a *de novo* review of the record and decide whether misconduct has occurred and the appropriate discipline. *Passmore*, 2011 OK 90, ¶ 15, 264 P.3d at 1243. We are not bound by the PRT's findings of fact, analysis of the evidence, view of the credibility of witnesses, or its recommendation of discipline. *Id.*

¶ 15 The record must be sufficient for this Court to conduct an inquiry into the essential facts. *Givens*, 2014 OK 103, ¶ 9, 343 P.3d at 217. On November 1, 2016, the OBA filed certified copies of the criminal information, plea of nolo contendere to two misdemeanor counts of soliciting prostitution, and the deferred sentence. Pursuant to Rule 7.2 RGDP, the judgment and sentence constitute conclusive evidence of the commission of the crime upon which the judgment and sentence was based and shall be the basis for discipline. The record consists of these certified copies, the briefs of the parties, attached exhibits and transcripts of proceedings held by the PRT. We find there is a sufficient record for our *de novo* review.

## ANALYSIS

¶ 16 In a summary disciplinary proceeding we address two issues: 1) whether the criminal conviction demonstrates the lawyer's unfitness to practice law, and if so, 2) determine the appropriate discipline to be imposed. *Givens*, 2014 OK 103, ¶ 10, 343 P.3d at 217.

¶ 17 We begin with examining whether Respondent's repeated pursuit of a sexual relationship with his client and his criminal conduct constitute professional misconduct. The Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2011, ch. 1, app. 3–A, provide

guidance at Rule 8.4 (a) and (b) which includes the following definition of professional misconduct:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. . . .

Comment 2 to Rule 8.4 ORPC provides in pertinent part:

Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

There are two distinct components of Respondent's behavior to be examined under the ORPC: (1) the non-criminal pursuit of a sexual relationship with S.R. and (2) the criminal solicitation of prostitution.

¶ 18 We will initially address the non-criminal aspect of Respondent's efforts for a sexual relationship with S.R. An attorney is prohibited from representing a client where there is a concurrent conflict of interest.[21] Respondent's actions in seeking a physical sexual relationship with S.R. and repeated requests for and receipt obtaining unclothed pictures of S.R. created a conflict of interest under Rule 1.8 of the ORPC.[22] The comments

---

21. Rule 1.7 (a), 5 O.S. 2011, ch. 1, app. 3–A provides:

Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to an-

other client, a former client or a third person or by a personal interest of the lawyer.

22. Rule 1.8 (j), 5 O.S. 2011, ch. 1, app. 3–A provides:

(j) A lawyer shall not have sexual relations with a client unless: (1) a consensual sexual relationship existed between them when the client-lawyer relationship commenced and (2) the relationship does not result in a violation of Rule 1.7 (a)(2).

to Rule 1.7, ORPC has a broad definition of "sexual relations" and it is not limited to physical touching when done for the purpose of arousing the sexual desire of either party or to degrade or exploit.[23] We refrain from repeating Respondent's extensive sexual dialogue expressed in the 83 pages of text communications. However, it is clear that Respondent's actions and pursuit of S.R. was for the sole purpose of gratifying his sexual desire and to exploit his client. Respondent's sexually exploitive behavior to his client, violated both Rule 1.7 of the ORPC and his professional duty as an attorney to protect his client's interests. *State ex rel. Oklahoma Bar Ass'n v. Gassaway*, 2008 OK 60, ¶ 36, 196 P.3d 495, 504.

¶ 19 Next, we must determine whether Respondent's crime of soliciting prostitution from his client constituted professional misconduct under Rule 8.4. We have previously noted that the attorney-client relationship is one of "utmost trust". *Gassaway*, 2008 OK 60, ¶ 35, 196 P.3d at 503. We have held that sexual advances within the professional attorney-client relationship are contrary to prescribed standards of conduct. *Id.* This Court has consistently held that "sexually suggestive remarks to clients will not be tolerated." *Gassaway*, 2008 OK 60, ¶ 35, 196 P.3d at 504, citing *State ex rel. Oklahoma Bar Ass'n v. Wilburn*, 2006 OK 50, ¶ 13, 142 P.3d 420, 424.

¶ 20 This is only the second case where this Court has been presented with sexual misconduct that involves the offer of trading sexual favors for legal services.[24] Respondent's case is not just simply a discipline issue that deals with the criminal aspect of soliciting prostitution; the solicitation was to *his client*, the one to whom Respondent owed the highest of fiduciary duties. Not only was his act of solicitation a crime, but he was inducing *his own client* to commit a crime. Such behavior by an attorney is a "flagrant disregard of the best interests of the client for [the attorney's] own needs." *State ex rel. Oklahoma Bar Ass'n. v. Miskovsky*, 1997 OK 55, ¶ 9, 938 P.2d 744, 748. Respondent's conduct adversely reflected on his fitness as a lawyer and constituted professional misconduct under Rule 8.4.

¶ 21 Next we turn to determine an appropriate discipline for these very specific facts. Prior to the filing of the PRT report, the parties submitted proposed findings of fact and conclusions of law and *both the OBA and Respondent* recommended his discipline be limited to a public censure and immediately lifting the interim suspension. Following the OBA's recommendation, the PRT issued its full report on March 2, 2017. The PRT suggested that Respondent's license should remain suspended for a period of one year from the date of the interim suspension and for a public censure to advise members of the bar that such conduct will not be tolerated.[25] The tribunal noted that Respondent "never expressed remorse for the impact his actions may have had on [S.R.]".[26] After the PRT report was filed, the OBA submitted its brief in chief. In this brief, the OBA shifted and no longer advocated for a public censure only, and instead simply indicated it had "no objection" to the PRT's recommendation for a full year suspension. The OBA did not independently advocate for a one year suspension, it simply did not object to this recommendation from the PRT.

---

23. Comment 12 to Rule 1.7, 5 O.S. 2011, ch. 1, app. 3–A provides:
   .... "Sexual relations" includes, *but is not necessarily limited to*, sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purpose of arousing or gratifying the sexual desire of either party or to humiliate, harass, degrade or exploit. "Sexual relationship" means an established course of sexual relations.

24. We first considered the issue of an attorney soliciting prostitution from a client in *Gassaway*,

2008 OK 60, 196 P.3d 495. The complaint of soliciting prostitution was only 1 of 15 separate complaints this Court considered in Gassaway's disciplinary matter that resulted in his disbarment. The matter before us with Respondent does not entail such a breadth of misconduct.

25. *OBA v. Hixson*, SCBD 6453, Report of Trial Panel, March 2, 2017.

26. *OBA v. Hixson*, SCBD 6453, Report of Trial Panel, March 2, 2017.

¶ 22 We may consider mitigating circumstances when determining appropriate discipline. *State ex rel. Okla. Bar Ass'n v. Corrales*, 2012 OK 64, ¶ 17, 280 P.3d 968, 973. Respondent presented four different mitigation witnesses. The PRT heard testimony from a former paralegal co-worker, the boy scout troop leader with whom Respondent served, an attorney colleague and a local district judge who has known Respondent a long time. Every witness presented a similar picture. This was an isolated incident with Respondent and highly out of character.

¶ 23 Respondent *never* engaged in physical contact with S.R. All of his unprofessional and criminal conduct was limited to his dialogue expressed by text message. Respondent has devoted much of his adult life volunteering in his local and professional community through service organizations and the OBA. He has held volunteer positions appointed by the governor as well as leadership roles within the OBA. Respondent expressed profound remorse regarding the effect his actions has had on the profession, his family and community. One witness indicated that this matter has changed Respondent. This Court favorably notes that Respondent admitted to his actions and was fully cooperative with the OBA, law enforcement and voluntarily resigned all of his esteemed volunteer positions.

¶ 24 Although it is disappointing to this Court that Respondent was unable to express remorse toward his client, it is not the role of this Court to punish attorneys. Respondent demonstrated significant mitigation on his behalf. However, we cannot ignore the very serious nature of Respondent's actions that resulted in the commission of a crime, involving his client, as well as violating sacred rules within the ORPC. The evidence indicates that this behavior by Respondent is an isolated incident and another key consideration is that this relationship never manifested in the physical realm between Respondent and his client.

¶ 25 The recommendation of the PRT for a one year suspension is not binding on this Court. *State ex rel. Okla. Bar Ass'n v. McBride*, 2007 OK 91, ¶ 15, 175 P.3d 379, 386. We have not previously been asked to consider an isolated case of soliciting prostitution involving a client where there has been no physical contact by the attorney. The lack of physical contact does not excuse Respondent's behavior, but is one factor for this to Court consider in upholding the goals of discipline which are to protect the public and preserve the integrity of the bar. *Givens*, 2014 OK 103, ¶ 18, 343 P.3d at 218, *Conrady*, 2012 OK 29, ¶ 16, 275 P.3d at 139. The purpose is to evaluate the attorney's fitness to practice law and not to punish the offending lawyer. Respondent has been subject to an interim suspension since November 14, 2016. We have identified four separate components to attorney discipline: 1) safeguard the public's interest; 2) preserve the public confidence in the judiciary; 3) promote the integrity of the judicial system; and 4) deter similar misconduct. *State ex rel. Okla. Bar Ass'n v. McArthur*, 2013 OK 73, ¶ 6, 318 P.3d 1095, 1098.

¶ 26 When considering other similar cases that have come before this Court, this matter warrants a more severe discipline than a public censure.[27] We have previously suspended an attorney for sixty (60) days for engaging in sexually offensive and harassing conduct with two female divorce clients, that *did not* involve the concurrent commission of a crime. *Miskovsky*, 1997 OK 55, 938 P.2d 744. The OBA initially recommended only a public censure in this matter, and only after the filing of the PRT report, did it indicate it would not object to the PRT's recommendation. As distasteful as it is to this Court that Respondent failed to demonstrate remorse for the impact of his actions on his client, there is sufficient other evidence to mitigate

---

**27.** See generally cases involving non-clients with limited sexually harassing behavior no criminal charges, and discipline of public censure; *State ex rel. Okla. Bar Ass'n v. Murdock*, 2010 OK 32, 236 P.3d 107, *State ex rel. Okla. Bar Ass'n v. Groshon, Jr.*, 2003 OK 112, 82 P.3d 99, *State ex rel. Okla. Bar Ass'n. v. Sopher*, 1993 OK 55, 852

P.2d 707. Also see *State ex rel. Okla. Bar Ass'n v. Wilburn*, 2006 OK 50, 142 P.3d 420, where attorney was charged with two misdemeanor counts of outraging public decency for sexual harassment of female security guards and given discipline of public censure.

his professional misconduct. Because of the very serious nature of Respondent's actions that involved a client as well as the commission of a crime, a suspension is warranted in this matter.

¶ 27 We hold that Respondent, W. Mark Hixson is hereby suspended for six months, with credit for the time served from the date his interim suspension was ordered. A public censure is issued to advise other members of the bar that such conduct will not be tolerated. Costs are assessed against the Respondent in the amount of $2,026.91 to be paid prior to reinstatement and no later than 6 months from the date of this opinion issued. Prior to filing for reinstatement, Respondent shall submit an affidavit to the OBA verifying he has paid the assessed costs in full as required by this opinion.

**RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR SIX MONTHS; AND ORDERED TO PAY COSTS**

Watt, Winchester, Edmondson, Colbert and Reif, JJ., concur;

Combs, C.J., Gurich, V.C.J., and Wyrick, J., dissent;

Kauger, J., concurs in part; dissents in part.

Combs, C.J., with whom Gurich, V.C.J. and Wyrick, J., join, dissenting

**I dissent. Respondent's actions warrant a discipline much greater than a six-month suspension with credit for time served on interim suspension, effectively reinstating the Respondent as of the date of the mandate in this proceeding. I would suspend the Respondent for two years with credit for time served on interim suspension with payment of costs within 90 days of the effective date of this opinion.**