STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STOUT



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STOUT

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STOUT
2019 OK 60
Case Number: SCBD-6732
Decided: 10/01/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 60, __ P.3d __

 

STATE OF OKLAHOMA, ex rel. OKLAHOMA BAR ASSOCIATION Complainant
v.
RICHARD E. STOUT, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE
PURSUANT TO RULE 6,
RULES GOVERNING DISCIPLINARY PROCEEDINGS

¶0 The complainant, Oklahoma Bar Association, commenced disciplinary proceedings against the respondent, Richard E. Stout. Based on evidence presented during a hearing, the Trial Panel concluded that his sexual involvement with one female client, and unwanted sexual advances and communications toward two other female clients, violated Rules 1.7, 1.8 (j) and 8.4 (a) of the Oklahoma Rules of Professional Conduct, (ORPC), 5 O.S. 2011, ch. 1, app. 3-A and Rule 1.3 of the Rules Governing Disciplinary Proceedings, (RGDP), 5 O.S. 2011, ch. 1, app 1-A. The Trial Panel of the Professional Responsibility Tribunal, (PRT) issued a report recommending Respondent's license be suspended for a period of three months.

RESPONDENT IS SUSPENDED FROM THE PRACTICE OF 
LAW FOR THREE MONTHS; ORDERED TO PAY COSTS.

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant,

Bob Burke, Oklahoma City, Oklahoma, for Respondent.

OPINION

EDMONDSON, J.:

¶1 The complainant, Oklahoma Bar Association, (OBA), filed its complaint against the respondent, Richard E. Stout, pursuant to Rule 6, RGDP.[1] The Trial Panel heard this disciplinary matter, found the respondent had violated the ORPC and RGDP, warranting discipline. The Panel recommended that the respondent be suspended from the practice of law for a period of three months, receive public censure and be required to pay the costs of the proceeding.

I. FACTS

Count 1

¶2 Mr. Stout received his license to practice law in Oklahoma in 1983. In February 2017, C.B. hired Mr. Stout to represent her in a juvenile deprived action. C. B. was the aunt of the deprived juvenile and was seeking full guardianship of her nephew and ultimately desired to adopt her nephew. During the course of the representation, Mr. Stout made unwanted sexual advances towards C.B. and sent her sexually suggestive emails. He also requested his client send him sexually suggestive photographs. Mr. Stout tried to hide his sexually suggestive communications requesting that their "private" communications be conducted through Facebook Messenger and that business communications be conducted through text. On more than one occasion, Mr. Stout requested that C.B. delete the messages he sent, because his wife did not know about these conversations.

¶3 Mr. Stout appeared in court on behalf of C. B. three or four times. She testified before the Trial Panel that she believed Mr. Stout had provided competent representation in court and she had no problem with the quality of his representation. However, C.B. did not reciprocate the feelings for Mr. Stout and she testified that she felt uncomfortable with his continued representation. C. B. terminated the attorney-client relationship with Mr. Stout and then retained a different attorney who provided legal services pro bono to complete the outstanding legal matters. C.B. testified that this incident has not caused her to mistrust lawyers.

¶4 Mr. Stout admitted to the Trial Panel that he sent sexually suggestive comments to C.B. by text message and social media. He admitted these actions toward his client were improper and created harm to his client.

¶5 Mr. Stout voluntarily contacted Lawyers Helping Lawyers (LHL) within days after receiving the OBA letter notifying him of the formal complaint filed against him regarding his actions toward C.B. and C.R. A person connected with LHL suggested Mr. Stout consider obtaining treatment from a sexual addiction in-patient treatment center in Tennessee. Mr. Stout immediately followed up on this recommendation and within three days he was admitted for in-patient treatment. He completed the program and remains faithful to his follow-up care. He has admitted to his improper behavior and expressed deep remorse over the effect of his actions on C.B.

Count 2

¶6 In 2016, C.R. retained Mr. Stout to represent her in a divorce case. In the course of this representation, Mr. Stout sent sexually suggestive text messages to C.R. with instructions to delete the messages after reading them. Mr. Stout explained to C.R. that neither his wife or C.R.'s boyfriend need to see what he was sending via text. Mr. Stout also engaged in text communication with C.R. that included crude sexual remarks about C.B., who was also a friend of C.R.

¶7 Because of the sexual overtones in the communications, C.R. did not feel like Mr. Stout was 100% focused on representing her in her divorce matter. Although she was uncomfortable with his actions, she wanted her divorce completed as quickly as possible so she did not terminate the attorney relationship. Toward the end of the representation, she personally handled modifying some of the child support documents in order to avoid having additional communications or interactions with Mr. Stout.

¶8 Mr. Stout admitted to his improper behavior and that his client had no intention of seeking any sexual relationship from him. He took full responsibility for his actions and said that at the time he engaged in this behavior his thinking was distorted from his sexual addiction.

Count 3

¶9 In 2016, L.B. retained Mr. Stout to represent her in a criminal matter. A mutual friend indicated that Mr. Stout would work with her with respect to payment of legal fees. L.B. understood this to mean a payment plan would be worked out. L.B. then contacted Mr. Stout who agreed to accept representation for the fee of $7500. L.B. did not have a drivers license or ability to come to his office so Mr. Stout offered to meet L.B. in her home. L.B. did not have money at the time to pay, and she wound up having sex with Mr. Stout that evening "because [she] was in a desperate situation." This was the only sexual encounter they had. L.B. testified she paid the entire amount of the requested fee in payments over time by cash and by check. Although no contract was signed, Mr. Stout believes that he may have given her a reduced fee following the sexual encounter. Neither L.B. or Mr. Stout has exact records as to the amount paid in fees. Both parties agree that L.B. did pay money for the legal services.

¶10 Mr. Stout admitted to the sexual encounter at the PRT hearing, and he also assumed full responsibility for his actions and made clear that L.B. did not encourage this behavior. Mr. Stout expressed remorse and further admitted to the PRT that L.B. "didn't make any suggestion. It was all -- it all started because of me, not because of her."[2]

¶11 At the time of the OBA investigative interview, the OBA only had knowledge of Mr. Stout's alleged improper conduct toward C.B. and C.R. However, when the OBA investigator asked Mr. Stout if he had been inappropriate with any other clients, he voluntarily told the investigator about L.B. Prior to this interview, the OBA had no knowledge that Mr. Stout had a sexual encounter with a client. Although Mr. Stout thought it was extremely unlikely L.B. would ever come forward to the OBA, Mr. Stout wanted to be honest and forthright, because he believed it was important to "tell them the truth."[3] Without Mr. Stout's honesty, the OBA may not have ever known about this encounter.

II. STANDARD OF REVIEW

¶12 This Court has exclusive original jurisdiction in bar disciplinary matters to exercise its constitutional, non-delegable power to regulate the practice of law and ethics. State ex rel. Okla. Bar Ass'n v. Passmore, 2011 OK 90, 264 P.3d 1238, State ex rel. Okla. Bar Ass'n v. Whitebook, 2010 OK 72, 242 P.3d 517. Protection of the public and purification of the Bar are the primary purposes of disciplinary proceedings rather than to punish the accused lawyer. State ex rel. Okla. Bar Ass'n v. Givens, 2014 OK 103, 343 P.3d 214. This Court will conduct a de novo review of the record and decide whether misconduct has occurred and the appropriate discipline. Passmore, 2011 OK 90, ¶15, 264 P.3d at 1243. We are not bound by the PRT's findings of fact, analysis of the evidence, view of the credibility of witnesses, or its recommendation of discipline. Id.

III. ANALYSIS

¶13 An attorney is prohibited from representing a client where there is a concurrent conflict of interest.[4] Subsection (a)(2) provides that a concurrent conflict of interest exists if there is a substantial risk that the representation of a client will be materially limited by a personal interest of the lawyer.[5] Mr. Stout's actions in engaging in communication of a sexual nature with C.B., C.S. and L.B. reflect a "personal interest of the lawyer" and created a conflict of interest under Rule 1.7 of the ORPC.[6] The comments to Rule 1.7, ORPC support the conclusion that the sexual communication by Mr. Stout was for the purpose of "gratifying the sexual desire of either party."[7] Mr. Stout admitted his actions were improper and not encouraged by any of the clients. He violated both Rule 1.7 of the ORPC and his professional duty as an attorney to protect his client's interests. State ex rel. Oklahoma Bar Ass'n v. Hixson, 2017 OK 56, 397 P.3d 483. State ex rel. Oklahoma Bar Ass'n v. Gassaway, 2008 OK 60, ¶36, 196 P.3d 495, 504.

¶14 Rule 1.8 (j) of the ORPC provides that "A lawyer shall not have sexual relations with a client unless: (1) a consensual sexual relationship existed between them when the client-lawyer relationship commenced and (2) the relationship does not result in a violation of Rule 1.7 (a)(2)." Mr. Stout admitted that he had sex with L.B. He also testified that this only occurred one time. Mr. Stout owned full responsibility that "it all started because of me, not because of her."[8]

¶15 Rule 8.4 (a) of the ORPC provides that "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." Sexual advances within the professional attorney-client relationship are contrary to prescribed standards of conduct. Hixson, 2017 OK 56, ¶ 19, 397 P.3d at 489, citing, State ex rel. Oklahoma Bar Ass'n. v. Gassaway, 2008 OK 60, 196 P.3d 495. Mr. Stout's actions violated this subsection of this Rule.

¶16 Rule 1.3 RGDP[9] subjects an attorney to discipline for any acts by that attorney that are contrary to prescribed standards of conduct, and "which would reasonably be found to bring discredit upon the legal profession." State ex rel. Oklahoma Bar Ass'n v. Smalley, 2018 OK 97, ¶ 19, 432 P.3d 1048, 1053. We agree with the Trial Panel's findings that Mr. Stout's conduct violated this provision.

¶17 The Trial Panel found that the OBA had proven by clear and convincing evidence that Mr. Stout had violated both the Rules of Professional Conduct and the Rules of Disciplinary Procedure. At the hearing, Mr. Stout offered that he would agree to additional following conditions: (1) Mr. Stout will not accept women clients and will not meet alone with women at any time associated with his practice of law; (2) Mr. Stout will maintain site blocking protection on his electronic devices; and (3) Mr. Stout will remain in treatment as recommended by his counselor and stay in contact with Lawyers Helping Lawyers. The Trial Panel next concluded that his conduct warranted professional discipline. We agree.

¶18 The OBA recommended that Mr. Stout be suspended from the practice of law for a period of three months. The OBA expressed that it "believes that Respondent is truly sincere regarding his actions toward his clients."[10] The OBA also noted Mr. Stout's commitment to treatment and he has taken affirmative steps through treatment and follow-up care. Further, Mr. Stout "should be given the utmost credit for these actions."[11] However, the OBA also notes that the harm done to his clients must also be considered and discredit to the legal profession.

¶19 Mr. Stout urged the Trial Panel and this Court to impose a public censure with costs and the additional recommendations regarding restrictions in his practice relating to females.

¶20 The Trial Panel concluded by unanimous vote, "that Respondent, Richard E. Stout, be suspended from the practice of law for three (3) months by the Supreme Court of the State of Oklahoma under the conditions offered by the Respondent during his testimony. Respondent will not accept women clients and will not meet alone with women at any time associated with his practice of law, will maintain site blocking protection on his electronic devices, will remain in treatment as recommended by his counselor and will stay in contact with Lawyers Helping Lawyers."[12]

¶21 Next we will address the appropriate discipline considering that the principal objectives of a disciplinary proceeding are to protect the public and purify the Bar, not to punish the lawyer. Givens, 2014 OK 103, 343 P.3d 214.

¶22 In State ex rel. Oklahoma Bar Ass'n. v. Smalley, 2018 OK 97, 432 P.3d 1048, Mr. Smalley was disciplined for his conduct involving two different female clients. Mr. Smalley admitted to having three sexual encounters with his client, Ms. A., although he insisted she was the aggressor on each occasion. Ms. A. disputed this fact. We noted that even if she were the aggressor, he should have never met with her again, and certainly not after hours, concluding that two of the sexual encounters were preventable and inexcusable. The other client, M.P. was a single mother of four children at the time she filed for divorce. Mr. Smalley was appointed as Guardian Ad Litem in the case. He demonstrated improper boundaries with Ms. A. and engaged in sexually suggestive dialogue with his client. The Trial Panel found that although there was evidence of remorse, there were inconsistencies. We determined that a six month suspension was warranted for Mr. Smalley.

¶23 In State ex rel. Oklahoma Bar Ass'n v. Hixson, 2017 OK 56, 397 P.3d 483, Mr. Hixson entered a plea to two separate criminal misdemeanor counts of solicitation of prostitution made to his 25 year old client with a newborn baby. In addition to his crimes, Mr. Hixson also repeatedly sent an overwhelming number of text messages requesting sexual contact with S.R., in fact there were 83 pages of text messages, instigated by Mr. Hixson. At the hearing, Mr. Hixson expressed deep remorse to his family, and various community organizations with whom he had been involved, but absent from his remorse was any empathy for his client. We imposed a six month suspension on Mr. Hixson.

IV. MITIGATION

¶24 We may consider mitigating circumstances when determining appropriate discipline. Upon receipt of the disciplinary letter from the OBA, Mr. Stout immediately sought help from Lawyers Helping Lawyers, admitted his behavior and expressed sincere and deep remorse toward his clients. Mr. Stout voluntarily consented to an inpatient treatment facility for sexual addiction. Following this treatment, he remains in therapy with a local counselor and regularly attends meetings. Mr. Stout also offered to not accept employment from any female clients in the future and in addition, he will never meet alone with any female relating to his practice of law. The Trial Panel found there was evidence of Mr. Stout's efforts to change his behavior through counseling and to guard against any future violations of the rules and the trust of his clients.

V. CONCLUSION

¶25 The OBA has established by clear and convincing evidence that the respondent, Richard E. Stout, violated Rules 1.7, 1.8 (j) and 8.4 of the ORPC and Rule 1.3 of the RGDP. Mr. Stout is suspended from the practice of law for three months, ordered to pay costs in the amount of $1,579.51, in addition to the following conditions: (1) Mr. Stout shall not accept female clients and will not meet alone with a female at any time associated with his practice of law; (2) he will remain in treatment as recommended by his counselor; (3) he will remain in contact with Lawyers Helping Lawyers; and (4) he will maintain site blocking protection on his electronic devices.

RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW 
FOR THREE MONTHS; SUBJECT TO CONDITIONS; 
AND ORDERED TO PAY COSTS.

CONCUR: DARBY, V.C.J., KAUGER, WINCHESTER, EDMONDSON, and COLBERT, J.J.

CONCUR IN PART AND DISSENT IN PART: GURICH, C.J., COMBS, and KANE, J.J.

FOOTNOTES

[1] Rule 6, Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal, 5 O.S. 2011, ch. 1, app. 1-A, Rules Governing Disciplinary Proceedings.

[2] Transcript, Hearing on April 23, 2019 before the PRT, testimony of Mr. Stout.

[3] Id.

[4] Rule 1.7 (a), 5 O.S. 2011, ch. 1, app. 3-A provides:

Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

[5] Id.

[6] Rule 1.8 (j), 5 O.S. 2011, ch. 1, app. 3-A provides:

(j) A lawyer shall not have sexual relations with a client unless: (1) a consensual sexual relationship existed between them when the client-lawyer relationship commenced and (2) the relationship does not result in a violation of Rule 1.7 (a)(2).

[7] Comment 12 to Rule 1.7, 5 O.S. 2011, ch. 1, app. 3-A provides:

.... "Sexual relations" includes, but is not necessarily limited to, sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purpose of arousing or gratifying the sexual desire of either party or to humiliate, harass, degrade or exploit."Sexual relationship" means an established course of sexual relations.

[8] Transcript of Hearing before the Professional Responsibility Tribunal, April 23, 2019, SCBD #6732.

[9] Rule 1.3 RGDP, provides: "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably by found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not condition precedent to the imposition of discipline."

[10] Complainant's Brief-In-Chief, June 12, 2019, State of Oklahoma ex rel. Oklahoma Bar Ass'n, v. Richard E. Stout, SCBD #6732.

[11] Id.

[12] Report of Trial Panel, May 21, 2019, SCBD #6732.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2008 OK 60, 196 P.3d 495, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GASSAWAY
Discussed at Length
 2010 OK 72, 242 P.3d 517, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WHITEBOOK
Discussed
 2011 OK 90, 264 P.3d 1238, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. PASSMORE
Discussed at Length
 2014 OK 103, 343 P.3d 214, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIVENS
Discussed at Length
 2017 OK 56, 397 P.3d 483, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HIXSON
Discussed at Length
 2018 OK 97, 432 P.3d 1048, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SMALLEY
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA