Winchester, J.
 

 ¶ 1 The complainant, Oklahoma Bar Association, filed its complaint against the respondent, Richard E. Smalley, III, pursuant to Rule 6, Rules Governing Disciplinary Proceedings.
 
 [1]
 
 The Trial Panel heard this disciplinary matter, found the respondent had violated Oklahoma Rules of Professional Conduct (ORPC) and Rules Governing Disciplinary Proceedings (RGDP), and his actions warranted discipline. The Panel recommended that the respondent be suspended from the practice of law for a period of one year, receive public censure, and be required to pay the costs associated with these proceedings.
 

 I. FACTS
 

 Count 1
 

 ¶ 2 Mr. Smalley received his license to practice law in Oklahoma in 1988. In 2012, a woman we shall call Ms. A, hired Mr. Smalley's law firm to represent her in a paternity action. After confirmation of the paternity of the child, Mr. Smalley continued his representation of Ms. A on custody issues. The trial panel concluded in its report to this Court that by 2013, the professional relationship had turned into a friendship.
 

 ¶ 3 The Bar Association called Ms. A's psychologist, Dr. C, as a witness, who testified that he had diagnosed Ms. A as bipolar. The Bar also offered an exhibit, admitted by agreement between the parties, of a written report from a second psychologist, Dr. H. That exhibit, dated November 5, 2014, was addressed to the attorneys in Ms. A's child custody case. Dr. H reported that Ms. A said she had been diagnosed with bipolar disorder in 2009.
 

 ¶ 4 Ms. A's testimony reveals that she has a degree in petroleum engineering, a master's degree in Native American Studies, and she was in her last semester of law school at the time she testified before the trial panel on June 18, 2018.
 

 ¶ 5 In April 2014, Mr. Smalley filed an Application for Emergency Custody Order after Ms. A reported her son's father verbally and physically assaulted her. In late October Mr. Smalley prepared for a pretrial conference in the custody case.
 

 ¶ 6 The complainant and respondent agree that Ms. A came to Mr. Smalley's office after hours on three nights, October 27th, 28th, and 30th, during the time Mr. Smalley was preparing for the pretrial conference. On each occasion the two engaged in a sexual act.
 

 ¶ 7 Regarding contested facts, Ms. A testified that Mr. Smalley used force on that first night. She also testified that she did not resist on those three nights because she wanted Mr. Smalley to continue to represent her and also because she did not have the
 
 *1051
 
 funds to pay for that representation. Mr. Smalley testified that Ms. A was the aggressor and that he told her to stop, tried to push her away, told her "no, no," but she would not stop. He testified that to stop her he would have had to use force and he did not want to do that.
 

 ¶ 8 During that week of settlement negotiations and trial preparation, Ms. A testified Mr. Smalley told her she did not have sufficient funds left in his lawyer's trust account to go to trial. On October 31, 2014, Ms. A testified he told her that he reached a settlement based upon the custody evaluator and guardian ad litem's recommendation that the child's father should receive custody of their child. She testified she did not agree with such a settlement, and then she retained new counsel that weekend.
 

 ¶ 9 Ms. A testified that she had been dating her new counsel and that she had sexual relations with him before and during the time he represented her. She paid him $5,000.00 by cashing out a retirement account. She testified that he took the case on the condition she was not lying.
 

 ¶ 10 Mr. Smalley presented evidence from another man with whom she had a child. He testified they had been engaged. But, for the previous fourteen months, he had sole custody of their child. Ms. A did not have visitation rights. He testified that in the fall of 2015 Ms. A revealed to him, "She went to his [Mr. Smalley's] place of business and almost had to force herself on him. And she said that she performed oral sex on him." He said she told him it took more than one attempt. Mr. Smalley's attorney asked about her demeanor, and he answered, "She was smirking." He continued,
 

 "She told me that she had planned this long before she actually acted on it. She told me that the first step that she did was she would grab his hand in court while they were having hearings on her son's case. And she had set the whole thing up so that she could have - she could declare a mistrial in her son's case if she were to lose. She also brought up civil suits."
 

 He further testified that Ms. A said this was a way to get out of paying her attorney's fee.
 

 Count 2
 

 ¶ 11 MP is a single mother of four children, between the ages of 4 and 12 in 2009, when she filed for divorce. One child, who had severe muscular dystrophy, died in 2017. In March 2010, Judge Barry Hafar appointed Mr. Smalley Guardian Ad Litem in the case. During that time Mr. Smalley met with MP and her children several times.
 

 ¶ 12 MP testified that while serving as Guardian Ad Litem, Mr. Smalley invited MP and her children to his home for a pool party. MP reluctantly accepted after he assured her that the invitation was not improper. Nevertheless, this invitation upset MP's husband when he learned about it. Mr. Smalley assured MP that the family's presence at the party would not cause a problem, and that the judge had assured him that he would not be removed from his court role. MP feared losing custody of her children. He told her he had known the judge for years, that they went to law school together, spent time together, attended holiday parties and golfed together. In other words, they were good friends. Mr. Smalley questioned some of the details in MP's testimony, but not her veracity.
 

 ¶ 13 MP also testified that at some time after the pool party Mr. Smalley asked her to come over and drink wine and sit in the hot tub. She declined. She believed this professional relationship had taken a bad turn and again feared her ex-husband would find out and use it against her.
 

 ¶ 14 Finally, on October 31, 2011, Mr. Smalley sent MP a text message that included his request for his "treat." MP tried to redirect the conversation. At the end of the text exchange he wrote an instruction to delete the messages. The Bar Association forensically located this text chain on her old phone, which was not working at the time she turned it over to the investigator. Mr. Smalley testified that he did not intend for the messages to be taken seriously and regretted that MP interpreted them that way. He admitted that they were inappropriate.
 

 II. STANDARD OF REVIEW
 

 ¶ 15 In disciplinary proceedings this Court acts as a licensing court in the
 
 *1052
 
 exercise of our exclusive jurisdiction.
 
 State ex rel. Oklahoma Bar Ass'n v. Garrett
 
 ,
 
 2005 OK 91
 
 , ¶ 3,
 
 127 P.3d 600
 
 , 602. Our review of the evidence is
 
 de novo
 
 in determining if the Bar has proven its allegations of misconduct by clear and convincing evidence. The Trial Panel's recommendations are neither binding nor persuasive.
 
 State, ex rel. Oklahoma Bar Ass'n v. Anderson
 
 ,
 
 2005 OK 9
 
 , ¶ 15,
 
 109 P.3d 326
 
 , 330. This Court's responsibility is not to punish an attorney, but to assess the continued fitness to practice law, and to safeguard the interests of the public, the courts, and the legal profession.
 
 State ex rel. Oklahoma Bar Ass'n v. Wilburn,
 

 2006 OK 50
 
 , ¶ 3,
 
 142 P.3d 420
 
 , 422.
 

 III. DISCUSSION
 

 ¶ 16 Rule 1.7 of the ORPC
 
 [2]
 
 covers conflicts of interest. Subsection (a)(2) provides that a current conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited ... by a personal interest of the lawyer." The trial panel found that Mr. Smalley's representation of both Ms. A and MP's children were materially limited by his personal interest. In the case of Ms. A, the trial panel concluded that Mr. Smalley showed an inability to set boundaries with Ms. A and should have immediately withdrawn from representation given the facts to which he testified. Even if Ms. A was the aggressor, as alleged by Mr. Smalley, he should have never met with her again, and certainly not alone and after office hours. The additional two sexual encounters were preventable and inexcusable.
 

 ¶ 17 Rule 1.8(j) of the ORPC
 
 [3]
 
 provides that "A lawyer shall not have sexual relations with a client unless; (1) a consensual sexual relationship existed between them when the client-lawyer relationship commenced and (2) the relationship does not result in a violation of Rule 1.7(a)(2)." Mr. Smalley admits he violated this Rule.
 

 ¶ 18 Rule 8.4 of the ORPC
 
 [4]
 
 , provides that it is professional misconduct for a
 
 *1053
 
 lawyer to (a) "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;'' (d) "engage in conduct that is prejudicial to the administration of justice," and (e) "to state or imply an ability to influence improperly a government agency or official or to achieve results by means that violated the Rules of Professional Conduct or other law." Mr. Smalley's actions violate subsections a, d, and e of that Rule. This Court has acknowledged the vagueness that Rule 8.4(d) presents, but has upheld the rule as "sufficiently definite for the purpose of disciplinary proceedings."
 
 Oklahoma Bar Ass'n v. Bourne,
 

 1994 OK 78
 
 , ¶ 6,
 
 880 P.2d 360
 
 , 361. To establish a violation of ORPC 8.4(d), the "interference contemplated must be serious" and must include some element of "deceit, dishonesty, misrepresentation, criminality, sexual misbehavior or other morally reprehensible conduct."
 
 State, ex rel. Oklahoma Bar Ass'n v. Minter,
 

 2001 OK 69
 
 , ¶ 24,
 
 37 P.3d 763
 
 , 774, (citing Bourne at ¶ 8).
 

 ¶ 19 Rule 1.3 RGDP
 
 [5]
 
 , subjects an attorney to discipline for any acts by that attorney that are contrary to prescribed standards of conduct, and "which would reasonably be found to bring discredit upon the legal profession." The record reveals that an Oklahoma City newspaper and a Tulsa newspaper reported Mr. Smalley's conduct, which the Trial Panel found had the added effect of degrading the public perception of the profession to a wider audience than if it had not been reported.
 

 ¶ 20 Finally, the Trial Panel found that the Bar Association had proven by clear and convincing evidence that Mr. Smalley had violated both the Rules of Professional Conduct, and the Rules of Disciplinary Procedure. The Panel concluded that such conduct warranted professional discipline. We agree.
 

 ¶ 21 Discipline often serves the interests of the public due to its deterrent effect, even when the attorney does not need such a deterrent to prevent continued misconduct.
 
 State ex.
 

 Rel. Oklahoma Bar Ass'n. v. Erickson
 
 ,
 
 2001 OK 66
 
 , ¶ 19,
 
 29 P.3d 550
 
 , 556. Although no case cited by the Trial Panel is precisely on point, two cases have similarities.
 

 ¶ 22 In
 
 State ex.
 

 Rel. Oklahoma Bar Ass'n. v. Downes
 
 ,
 
 2005 OK 33
 
 ,
 
 121 P.3d 1058
 
 , Mr. Downes represented Mrs. W in a divorce case. She had graduated from law school a few years earlier, and began a sexual relationship. Her husband's lawyer, Ms. Muscari, found out about the relationship and in a letter accompanying a request for admissions about specific encounters, also informed Mr. Downes that she intended to report the matter to the Bar Association. The Bar Association alleged four counts of violation of the Oklahoma Rules of Professional Conduct and the Rules Governing Disciplinary Proceedings against Mr. Downes. Two counts did not involve Ms. W, but were accusations from other clients. This Court observed that a combination of ethical violations warranted greater discipline, and suspended Mr. Downes from the practice of law for one year.
 

 ¶ 23 In
 
 State ex. Rel. Oklahoma Bar Ass'n. v. Anderson
 
 ,
 
 2005 OK 9
 
 ,
 
 109 P.3d 326
 
 , the accuser, Ms. Stroud, alleged sexual crimes against Mr. Anderson. She had employed him to represent her in a medical malpractice case. There were "three to four" sexual encounters. Mr. Anderson was also suspended for one year.
 

 IV. MITIGATION
 

 ¶ 24 In mitigation, the Trial Panel found that Mr. Smalley practiced family law for twenty years without any prior formal complaints, and that he enjoyed a good reputation
 
 *1054
 
 in the legal community as a competent family law attorney that colleagues solicit his input and advice. The Panel concluded that Mr. Smalley showed remorse, but that the hearing revealed facts tending to show the evidence of remorse has some inconsistencies. He did fully cooperate with the General Counsel's office with regard to both responding to the grievances and attending interviews. The Panel also concluded that his actions do not indicate an ongoing pattern of improper conduct.
 

 V. CONCLUSION
 

 ¶ 25 Complainant has established by clear and convincing evidence that the respondent, Richard E. Smalley, III, violated Rules 1.7(e), 1.8(j), and 8.4(d) of the Oklahoma Rules of Professional Conduct, and Rule 1.3 of the Rules Governing Disciplinary Proceedings. Mr. Smalley is suspended from the practice of law for six months, publically censured, and ordered to pay the costs of this proceeding in the amount of $4,364.53 within ninety days of the effective date of this opinion.
 

 THE RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR SIX MONTHS, REPRIMANDED, AND ORDERED TO PAY COSTS.
 

 ALL JUSTICES CONCUR.
 

 [1]
 

 Rule 6. Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal, 5 O.S.2011, ch. 1, app. 1-A, Rules Governing Disciplinary Proceedings.
 

 [2]
 

 Rule 1.7 (ORPC ) provides:
 

 "(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
 

 "(1) the representation of one client will be directly adverse to another client; or
 

 "(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
 

 "(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
 

 "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
 

 "(2) the representation is not prohibited by law;
 

 "(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
 

 "(4) each affected client gives informed consent, confirmed in writing."
 

 [3]
 

 Comment (17) of Rule 1.8 provides:
 

 "[17] The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence. The relationship is almost always unequal; thus, a sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role, in violation of the lawyer's basic ethical obligation not to use the trust of the client to the client's disadvantage. In addition, such a relationship presents a significant danger that, because of the lawyer's emotional involvement, the lawyer will be unable to represent the client without impairment of the exercise of independent professional judgment. Moreover, a blurred line between the professional and personal relationships may make it difficult to predict to what extent client confidences will be protected by the attorney-client evidentiary privilege, since client confidences are protected by privilege only when they are imparted in the context of the client-lawyer relationship. Because of the significant danger of harm to client interests and because the client's own emotional involvement renders it unlikely that the client could give adequate informed consent, this Rule prohibits the lawyer from having sexual relations with a client regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client."
 

 [4]
 

 Rule 8.4 (ORPC ) provides:
 

 "It is professional misconduct for a lawyer to:
 

 "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 

 "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 

 "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 

 "(d) engage in conduct that is prejudicial to the administration of justice;
 

 "(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or
 

 "(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law."
 

 [5]
 

 Rule 1.3 (RGDP), provides "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."